## MANKEY v. HOYT.

Evidence **held** to warrant a finding that a check given as a payment on land was indorsed for collection, and not generally, as affecting the maker's rights under his contract to purchase the land from the payee, on the insolvency of the drawee bank.

A creditor's negligence in presenting a check accepted in the usual course of business may operate as payment of the debt, so far as the debtor is prejudiced thereby.

Notice of hishonor of a check drawn on a bank in another state can be given only by notice of its protest.

A contract vendor received a check for the first payment, but, without giving notice of protest, on the drawee bank refusing payment on account of its insolvency, notified the purchaser of a rescission on account of failure to make the payment. **Held,** that the

vendor's failure to give notice of protest operated as a payment, making it proper to require her to repay the amount, with interest, as a condition upon cancellation of the recorded contract, especially since the vendor had sold to a third person at an increased price.

(Opinion filed June 21, 1911.)

Appeal from ·Circuit Court, Clark County.  Hon. GEORGE H. ·MARQUIS, Judge.

Action by William Mankey, administrator of Mary Mankey against H. L. Hoyt.  From the judgment, plaintiff appeals.  Affirmed.

*Frank G. Bohri,* for appellant.  *Warren & Warren,* for respondent.

HANEY, J.  This action was instituted to secure the cancellation of a recorded contract to convey certain real property owned by the plaintiff.  The relief sought was granted upon condition that the plaintiff pay to or deposit for the defendant $500, with interest, and certain costs.  Being dissatisfied with the conditions, the plaintiff applied for a new trial, which was refused, and she appealed.  Subsequently the administrator of her estate was substituted as party plaintiff.

The facts as found by the learned trial judge are substantially as follows:  On September 19, 1902, at a farm near Garden City, in Clark county, this state, the decedent and the defendant entered into a written contract, whereby the former agreed, in consideration of $500 (the receipt of which was acknowledged in the contract) and full performance by the latter, which required a second payment of $800, March 10, 1903, to convey to the latter 132 acres of land, situated in that county.  The contract contained this clause:  "Provided always, and these presents are upon the express condition that time shall be considered the essence of this contract, and that, in case of the failure of the said H. L. Hoyt in the performance of all or either of the covenants and promises on her part to be performed, the said Mary Mankey shall have the right to declare this contract void without notice to the said H. L. Hoyt, and thereupon to recover all the interest which shall have accrued upon this contract up to the day of declaring it void, as rent for the use and occupation of said premises, and to resell

said land to any other purchaser, and hold and retain the moneys paid on this contract by the said H. L. Hoyt as liquidated damages." At the same time and place the defendant delivered to the decedent the former's personal check upon the Bank of Oto, Iowa, for $500, payable to the order of the latter. Decedent retained the check until September 25, 1902, when she indorsed the same and delivered it to the Garden City Bank of Garden City, for collection, receiving a time certificate of deposit for $500. The check having been forwarded through several banks in "the usual commercial way," and "according to the regular course of business," reached Oto, Iowa, on October 6, 1902, when it was presented for payment and payment refused, owing alone to the insolvent condition of the bank, which, shortly after and on the same day, closed its doors. Nothing has been paid by or for the bank on account of the check to any one, and it remains wholly unpaid. "No protest of said check nor notice thereof has been given or made." When the check was delivered to the decedent, and continuously until its payment was refused, the defendant had on deposit with the bank upon which it was drawn sufficient funds to pay the same. It would have been paid if presented on any day between September 18 and October 6, 1902. On October 25, 1902, the check having been returned to the decedent and she having surrendered the certificate of deposit, the decedent mailed a notice of rescission, stating as the ground therefor that the defendant had failed to pay the $500, as required by the terms of the contract, which notice was received by the defendant in the due course of the mails, and on November 7, 1902, the defendant caused the contract to be recorded in Clark county. The defendant made no attempt to perform the contract, except to deliver the check as stated, and aside from causing it to be recorded made no attempt to assert any rights under it, before this action was commenced, allowing the decedent unchallenged possession of the property. Between the giving of the notice of rescission and the commencement of this action, the land increased in value from $33, the price agreed upon in the contract, to $45, per acre. On August 15, 1908, and before this action was commenced, the decedent and "an innocent purchaser" entered into a contract for

the sale of the land, at the agreed price of $5,850; such purchaser paying decedent $2,400, and entering into possession.

[1] The contention that the trial court was not justified in finding that the check was delivered to the Garden City Bank for collection, because the undisputed evidence shows that the decedent disposed of it and received a time certificate of deposit, which was returned after the check was protested, is not tenable A daughter of the decedent testified: "Mother kept the check a few days before she took it to the Garden City Bank and obtained a time certificate of deposit for the check. * * * In a week or two * * * the cashier of the bank brought the check down. It had been returned from the Oto bank, protested and unpaid, and he asked Mother for the surrender of the certificate, so mother returned the certificate." James M. Johnson testified: "I am cashier of Garden City State Bank of Garden City, S. D., and have in possession what is known as the remittance register of said bank, covering its business transactions for the year 1902. I find in this register that on September 25, 1902, there is recorded a check for $500, signed by H. L. Hoyt, dated September 19, 1902, drawn on the Oto Bank, Oto, Iowa, indorsed by Mary Mankey, amount of check $500, which was September 25, 1902, remitted by the Garden City State Bank to its regular correspondent, the Bank of Brookings, Brookings, S. D. The certificate register of time deposits of the Garden City State Bank shows that on September 25, 1902, that certificate No. 55, for $500, was issued to Mary Mankey, interest at 6 per cent. if left for 12 months, and 5 per cent. if left six months. The record shows this certificate to have been surrendered on October 17, 1902." The check was payable to the order of the decedent, who indorsed it at or before the time of its delivery to the Garden City Bank. The form of the indorsement is not disclosed. Assuming it was a general indorsement, legal title passed to the bank. Nevertheless it may have been delivered for collection. Commercial paper delivered for collection frequently, if not usually, is thus indorsed. Seybold v. Bank, 5 N. D. 460, 67 N. W. 682. The certificate of deposit was in the usual form of such instruments. Its subsequent surrender is not incon-

sistent with the inference that the check was delivered for col-lection.

The contention that the trial court was not justified in finding that no notice of protest was given is clearly untenable. While it appears that one Riedesel, as notary of his bank, "presented the check for payment and payment was again refused," the abstract is silent as to any other act of the notary.

Finally it is contended that the facts as found by the trial court did not sustain its judgment. As neither the plaintiff nor the defendant claims, or is in position to claim, that the contract should be performed, it certainly should be canceled. "On adjudg·ing the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require." Rev. Civ. Code, § 2355. The maxim, "He who seeks equity must do equity," requires that one who seeks the aid of equity in such·a case as the one at bar shall be compelled to accord to the other party, all the equitable rights to which the other is entitled in respect to the subject-matter. 16 Cyc. 140.

Both parties to the contract appear to have acted in good faith. If the defendant was not in default as to the $500 payment, when the notice of rescission was given the plaintiff could not rescind, notwithstanding the forfeiture clause, assuming it was enforceable according to its terms, without restoring or offering to restore what she had received under the contract. Rev. Civ. Code, § 1285. As the trial court did not find there was an agreement to accept the check as absolute payment, and it was not actually paid, the defendant was in default, unless the decedent's want of diligence operated to extinguish defendant's obligation.

[2] Though the courts uniformly hold that want of due dili-gence on the part of a creditor who accepts a check in the usual course of business may operate as payment of the antecedent or contemporaneous debt for which it was given, to the extent of the injury resulting to the debtor from such want of diligence, it is not clear what constitutes due diligence in such a case. While some decisions assume that due diligence requires compliance with the rules relating to commercial paper, others seem to pro-

ceed on the theory that the question is one to be determined by the facts and circumstances of each particular case. This court has held that, where a debtor sends his creditor, in payment of his debt, a third person's check, made payable to the creditor, and not signed or indorsed by the debtor, the creditor is bound to forward the check for collection on the day following its receipt, and if he holds it for several days, with the result that it is dishonored when presented, while it would have been paid if presented at the proper time, he is, as a matter of law, guilty of such negligence as will convert the provisional payment into an absolute payment of the debt. Manitoba M. & I. Co. v. Weiss, 18 S. D. 459, 101 N. W. 37. Application of the same rule to the case at bar would compel the conclusion that the decedent's want of diligence operated as payment. But in the Manitoba Case the creditor's duty was defined as it is defined by the law merchant, and a distinction drawn between a case involving the debtor's check and the check of a third person.

[3] However, it is not necessary to determine whether presentment was made within the time required by the statute, for the reason that the check here involved was a foreign bill of exchange, notice of the dishonor of which could be given only by notice of its protest. Rev. Civ. Code, §§ 2261, 2262, 2279. Notice of protest not having been given, the drawer of the check was exonerated, and decedent's failure to give such notice operated as payment.

[4] As the defendant was not in default when the notice of rescission was given, the contract should not have been canceled without requiring restoration of what, in contemplation of law, had been received by the decedent. The result is just and equitable. Before this action was commenced, the decedent had again sold her land for about $1,000 more than the defendant was to pay for it. During the meantime decedent enjoyed the rents and profits of the premises. So her estate, after restoring $500, with interest, will have gained about $1,000 by the abrogation of the contract with the defendant, while its cancellation, without restoration would entail a loss upon the defendant, through no fault

of his, of $500, with interest, by reason of a transaction from which she derived no benefit whatever.

. The judgment of the circuit court is affirmed.