**OLBERDING CONSTRUCTION COMPANY, INC., Appellee,**

v.

**Elmer RUDEN and Marie Ruden, Appellants.**

**No. 2–57009.**

Supreme Court of Iowa.

June 30, 1976.

John D. Randall, Cedar Rapids, for appellants.

Moss & Heims and Marc W. Casey, Dyersville, for appellee.

Heard by REYNOLDSON, Acting C. J., and MASON, RAWLINGS, REES and HARRIS, JJ.

REES, Justice.

This is an appeal by defendants Elmer and Marie Ruden from a decree of the trial court foreclosing the plaintiff's mechanics' lien against their dwelling house and dismissing defendants' counterclaim. We modify the decree of the trial court and affirm the same as modified.

At all times material to the action defendants owned a home in Dyersville. Plaintiff Olberding Construction Company (hereinafter "Company") maintained its principal place of business in the same city. After a flood in August of 1972, Mr. Ruden contacted Eugene Olberding, vice-president of plaintiff Company, about the possibility of waterproofing the Rudens' basement wall, pouring a new wall outside the old one and doing some landscaping and sidewalk work on the premises. Ruden had been acquainted with Olberding for several years, and the Company had done work for the defendants previously. Olberding advised Mr. Ruden that the proposed work would not hold up or protect against further flood damage.

A second flood occurred September 13, 1972, and the area in which the Ruden home was situated was declared by the government to be a disaster area, making federal relief funds available. Ruden decided to have his home raised and a new basement put in with the aid of such disaster funds. About September 15 Ruden went to Olberding's home to discuss the proposed work. There is a conflict in the testimony regarding whether Olberding ventured a guess at that time as to the probable cost of such work. In any event, Ruden asked Olberding to come to the Ruden house and prepare a cost estimate of the necessary work, including labor and materials. Ruden told Olberding it was his impression the estimate was necessary in order for the Rudens to secure the federal disaster funds.

On or about September 20 Olberding came to the Ruden home in order to see what work would be necessary. He advised the Rudens to contact a Mr. Aylsworth about raising the house so the foundation work could be done. About a week later Ruden, Olberding and Aylsworth met at the Ruden home to discuss the further details of the proposed work. According to Ruden, the figure of $2800 for the entire job was discussed, but Aylsworth suggested a figure of $3000 due to the possibility that unexpected difficulties could arise because of the age of the dwelling house. Olberding testified he could not remember the substance of such conversation.

The next day Olberding brought to the Ruden home two copies of an estimate and left them with Mrs. Ruden. The estimate, which had been prepared and signed by Olberding, called for digging out and replacing the existing foundation, backfilling the wall, replacing the floor, putting in new windows and filling with sand. It included labor. Olberding indicated a price range for the work of from $3200 to $4000 in his estimate. Two or three weeks later Ruden told Olberding to go ahead with the work.

Olberding testified it was his understanding the work would be paid for on a "time and material" basis, but he admitted he did not explain such an arrangement to the Rudens.

Work on the Ruden home commenced October 21, 1972. On December 15 of the same year, while work was in process, Ruden paid Olberding $3500. There is a dispute as to whether this payment was intended by the parties to constitute partial or complete satisfaction of the cost of all the work. The Company stopped work on the Ruden home December 31, and on January 31, 1973, sent to Rudens a bill for an additional sum due of $2,370.59.

On July 31, 1973, the Company instituted the within action against Mr. and Mrs. Ruden. In its petition the plaintiff alleged there was due and owing it $1,838.85 as the fair and reasonable value of the construction work done on the Rudens' house, which sum was the balance due for the work performed in excess of the $3500 already paid by the Rudens. Plaintiff further prayed for a foreclosure of its mechanics' lien and the issuance of a special execution.

In answer the Rudens denied the Company's allegations of reasonable value and de-

nied the debt was due and owing. They affirmatively alleged they had already paid the Company $3500 for the work it performed, that the agreement between the parties called for the work to be done for a sum not to exceed $4000 and that the work done was faulty, unsatisfactory and unacceptable, making the cost of satisfactorily repairing the residence $10,000.

The answer also contained a counterclaim in which the Rudens sought to collect $13,-000 damages from the Company as the result of the alleged faulty, unsatisfactory and unacceptable workmanship on the part of the Company.

In its reply the Company admitted receipt of the $3500 from the Rudens, but denied all other allegations in the answer and counterclaim.

Trial commenced October 16, 1973. On December 18 trial court entered judgment for the Company and against Rudens in the amount of $1,614.85, ordered foreclosure of the mechanics' liens, directed the issuance of a special execution against the property and dismissed the Rudens' counterclaim. Trial court arrived at the figure of $1,614.85 by correcting a $24 error in the computation as shown on the statement for a mechanics' lien and subtracting from the resultant amount the sum of $200 for incomplete and defective work.

The defendants state the following issues for review:

(1) Trial court erred in finding the Company was entitled to $5,114.85 as reasonable compensation for the work performed.

(2) Trial court erred in holding the Company was entitled to $5,114.85 as reasonable compensation for the work performed in view of the fact the Company's vice-president had submitted a signed written estimate to defendants which set out a price range of $3200 to $4000 for the work proposed.

(3) Trial court erred in failing to find the Company had accepted $3500 as payment in full for the work performed.

(4) Trial court erred in entering judgment against defendants for a sum of money with seven percent interest thereon from January 1, 1973.

(5) Trial court erred in dismissing defendants' counterclaim.

■ I. This case sounded in equity and our review is *de novo*. Rule 334, Rules of Civil Procedure. We give weight to the trial court's findings of fact, especially in matters involving credibility, but we are not bound by them. Rule 344(f)(7), R.C.P.

II. In their first issue stated for review, defendants assert trial court erred in finding the Company was entitled to $5,114.85 as reasonable compensation for the work done on the Ruden home. All parties to this appeal agree the question is one of fact.

■ With respect to this issue, the parties have narrowed the question before us to one of the reasonable value of the services rendered by the Company. There is no claim that an express contract existed as to the amount of compensation to be paid. It is well settled that there may be an implied contract on a point not covered by an express one, and where there is no agreement as to the amount of compensation, the law implies a promise to pay reasonable compensation. *Sitzler v. Peck*, 162 N.W.2d 449, 451 (Iowa 1968).

■ The proper measure of recovery is the reasonable value of the services rendered and materials furnished, and should be distinguished from actual cost to the contractor. *McDonald v. Welch*, 176 N.W.2d 846, 847 (Iowa 1970). The Rudens assert trial court's figure of $5,114.85 is too high.

First, the Rudens direct our attention to Olberding's initial oral estimate of $2800 for the job, the written estimate stating a range of $3200–4000 and Olberding's oral assessment of December 15, within two weeks of the time the Company stopped work, that the value of the work done by that date was $2800, "give a little either way."

With regard to Olberding's oral assessment of the value of the work done by December 15, we observe there was a con-

flict of testimony at trial. Olberding testified he told Mr. Ruden on that date that the $3500 would cover most of the work up to that point. Mrs. Ruden testified it was her impression on December 15 that Olberding did not know "where he was at pricewise or workwise." We are constrained to give little weight to Mr. Ruden's representation in this regard.

We believe the estimates given by Olberding, particularly the written estimate, are of some relevance in ascertaining the fair and reasonable value of the labor and materials, but they are, by no means, conclusive. We said in *Denniston and Partridge Company v. Mingus*, 179 N.W.2d 748, 752 (Iowa 1970):

"An estimate is equivalent of 'more or less' and does not pretend to be based on absolute calculations. Use of the word precludes accuracy. 'To make an estimate' ordinarily means to calculate roughly or to form an opinion as to amount from imperfect data. [citations]."

We give less weight to the estimates here because we find additional work was performed which was not explicitly contemplated by the original written estimate. Included in the work ultimately done but not contemplated by the estimate was hauling away the old foundation, construction of new basement steps with handrail, construction of front and back porch temporary steps, sanding under the basement, insulation, erection of steel columns, sill seal, foundation coatings, construction of a ceiling under the porch, new beams and new sills and boards on the porch.

In sum, we believe the evidence of Olberding's estimates was of very limited value to a determination of the fair and reasonable value of the Company's work.

Next, the Rudens contend the evidence showed the work by the Company was performed in an unworkmanlike manner, resulting in a shoddy and faulty finished product. Specifically, they claim the evidence showed the floor on a part of the house was out of level by three inches because of the manner in which the foundation block work was laid, and a support beam for the house had been directed toward a basement window, then cut off and left hanging with no support under it. Furthermore, the Rudens direct our attention to the evidence the basement beam work was generally poor, support posts for beams were not set in a straight line, brick work on the chimney was crooked and sloppy, some of the basement windows were clear glass and others were frosted glass, a beam blocked a window, the basement steps were so steep as to be unsafe, mortar between cement blocks had frozen and fallen out and the front porch leaned toward the house, allowing rain water to flow into the basement. In addition the Rudens introduced evidence that cement had been splashed on the side of the house and Olberding's caterpillar tractor had driven over and broken the Rudens' new sidewalk, curb and gutter, damaged a neighbor's lawn and broken off a tree on the Ruden property.

The Rudens called one Wedewer, a Dyersville carpenter contractor, as an expert witness. Wedewer testified $3500 would be a fair total price for the work done. He also testified the workmanship of the job would not be satisfactory to him, and, in fact, the work done decreased the value of the Ruden house by $2000. On cross-examination, however, Wedewer admitted that for 21 years prior to 1965 he had never undertaken to raise an entire house, tear out the foundation and put in a new one. From 1963 until late November 1972 he had no experience with any foundation work on older houses.

The Rudens also called Lynus Luensmann, a self-employed carpenter, who testified regarding several alleged defects in the construction work. Luensmann testified the new stairs built were too steep for the width of the tread, the porch work was unacceptable and a cut off beam in the basement indicated poor workmanship. He estimated the house was worth no more after the construction work that was done by Olberding than it was before any work was performed.

On cross-examination Luensmann admitted the steps constructed by the Company complied with F.H.A. headroom standards, whereas such standards were not met after Luensmann's subsequent reconstruction of them. Luensmann explained this was a "matter of judgment." He also testified he had no particular qualifications for estimating the value of the Ruden home before or after the work was done by Olberding. As to the porch work, he admitted he did not know whether the structure was less level after the work than before, and did not know who would have been responsible for the unevenness, in any event.

Mr. Ruden testified the value of his home was $10,000 to $12,000 less than it would have been if the improvements had been done in a workmanlike manner.

The plaintiff Company introduced evidence to support its claim of reasonable value of the work done and materials furnished. Eugene Olberding testified as to the items of labor, material and rental of equipment which made up the bill submitted to the Rudens. Time cards of employees were introduced to substantiate the labor charges, which amounted to $5.50 per workman-hour.

Olberding testified the workmanship on the Ruden house was satisfactory. The Company called Carl Kelchen, a concrete contractor, to testify in its behalf. Kelchen testified the labor charges and rental charges for equipment were reasonable for the area of Western Dubuque County in which Dyersville is located. He further testified that just the cement foundation work and block work, including the sandfill and foundation coating, would have cost the Rudens a price very close to the entire billed amount.

Wilfred Pasker, a plasterer and block layer, also testified on behalf of the Company as to the quality of the work done and particularly as to the foundation and basement wall work. Pasker himself laid the blocks in the Rudens' new basement.

The resolution of the case below clearly depended on matters of credibility. The Company introduced business records and expert opinion testimony tending to show the Rudens received a valuable improvement to their home worth substantially the amount of the billing figure. The Rudens introduced photographs and expert testimony tending to show the improvements were not as valuable as the charges would indicate. There was even some testimony that the Ruden home was worth less after the construction work than before.

It is obvious from the decision that the trial court gave substantial credence to the evidence introduced by the Company. On the record before us, we cannot say the court was wrong in so doing. It would behoove us to say again that although our review is *de novo*, we give weight to the findings of the trial court, especially in matters involving credibility of witnesses. Rule 344(f)(7), R.C.P., *supra*.

■ Guided by the above standard, we affirm trial court's determination of the reasonable value of the work performed by the Company for the defendants. Directly pertinent is our pronouncement in *McDonald v. Welch, supra,* 176 N.W.2d at 849, wherein we said:

"In mechanics' lien cases, involving as they do numerous charges and counter charges which depend entirely on the credibility of the parties, we have frequently held the trial court is in a more advantageous position than we to put credence where it belongs."

We hold trial court was correct in its findings of the reasonable value of the construction work done by the plaintiff on the Ruden property.

III. The Rudens have advanced one final argument in connection with their first issue stated for review. Although our holding above rejects by implication such argument, we nonetheless comment on it very briefly.

The Company's evidence indicated a four percent travel charge was added to the bill presented the Rudens, as well as a ten percent handling charge for most materials. The Rudens assert such charge could not be

allowed in the computation of reasonable value of the work performed.

Eugene Olberding testified the travel charge was calculated with reference to the distance of travel into Dyersville based upon five mile intervals. According to Olberding, the charge helped defray employee time of travel and cost of gasoline. Olberding testified the ten percent charge was based upon the amount of handling necessary with respect to the materials used. According to Olberding, both charges were reasonable and customary in the area.

██ That such charges were, on the facts of this case, a proper component of the reasonable value of the work done by the Company appears to be implicit in trial court's findings. We have affirmed these findings. We do, however, reiterate the principle that recovery in cases such as the one with which we are concerned is based upon the reasonable value of services and materials to the owner and not upon actual cost to the contractor. See *McDonald v. Welch, supra,* 176 N.W.2d at 847. Furthermore, a profit may be included as part of the reasonable value if there is evidence to support such a claim. *Id.* at 849.

IV. In their second issue stated for review, the Rudens ask that we adopt the rule announced in *Seybolt v. Baber,* 203 Md. 20, 97 A.2d 907, quoted in 17A C.J.S. Contracts § 363, p. 368, that:

"Where the contractor submits an estimate that the proposed work will cost not less than a certain sum and not more than another sum, whereupon he is directed to perform the work, no contract for a specified sum arises, and the contractor can recover the reasonable value of the services rendered, but not exceeding the larger sum."

Accordingly, the Rudens argue that the Company should not, in any event, be allowed to recover more than such amount which when added to the payment of $3500 would equal $4000, the upper limit of the written estimate, *i. e.,* $500.

██ We were asked to apply the above rule in *Denniston and Partridge Company*

v. *Mingus, supra,* but the factual situation there did not lend itself to such application. Similarly, the factual situation in the instant case does not present an appropriate context in which to consider the rule urged. As we found in Division II above, substantial work was ultimately performed by the Company which was not contemplated in the written estimate.

Accordingly, we decline the Rudens' invitation to adopt the *Seybolt* rule. In so doing, we do not comment as to whether we would adopt the rule urged in an appropriate case.

V. In their third issue stated for review, the defendants assert trial court erred in failing to hold the Company had accepted $3500 as payment in full for the entire job done. In this regard the Rudens advance three arguments.

First, defendants contend the Company admitted the Rudens' allegation of full payment by failing to respond to it in a subsequent pleading. On October 8, 1973, the Rudens filed an amendment to their answer, alleging they paid $3500 to Eugene Olberding on December 15, 1972, and that the plaintiff had orally agreed to accept that as payment in full for the entire Ruden job. Plaintiff filed no responsive pleading and trial was commenced October 16. Rule 102, R.C.P., as it was constituted at the time of trial, provided:

"102. What Admitted. Every fact pleaded and not denied in a subsequent pleading as permitted by these rules shall be deemed admitted except (1) allegations of value or amount of damage, (2) allegations of a reply, and (3) facts not previously pleaded that are set forth in pleadings filed subsequent to the seventh day preceding the trial, all of which shall be deemed denied by operation of law."

The Rudens assert the failure of the Company to respond to their allegation of payment asserted in the amendment to their answer established the fact of full payment.

██ We believe this assertion must be rejected upon either of two grounds. If the facts stated in the petition contradict facts stated in the answer, the issues are

joined without the necessity for a reply. *Connell v. Hays,* 255 Iowa 261, 271, 122 N.W.2d 341, 347. The petition alleged a sum due and owing and contradicted the answer's allegation of payment. Furthermore, the record indicates evidence as to payment was introduced by both sides of the litigation. Where parties proceed to try an issue without raising any question as to reply, it amounts to consent to try the issue and it is rightfully in the case. *Connell v. Hays, supra,* 255 Iowa at 272, 122 N.W.2d 341 at 347–348. At the time of the trial in *Connell,* rule 102, R.C.P., was cast in the same form as it was during trial of the case with which we are now concerned.

■ Second, the Rudens argue the evidence adduced at trial demonstrated the $3500 check was intended by the parties to be payment in full. In Division I above we commented upon the conflicting testimony in this regard, and we need not belabor the point further here. We are satisfied from the record the Rudens did not demonstrate the fact of full payment.

■ The Rudens' final argument in this issue stated for review is that the Company should be precluded from receiving more than the $3500 payment under the doctrine of equitable estoppel. There was nothing in the Rudens' answer which could be construed as raising the theory of estoppel. There is no indication such issue was tried consensually and trial court made no ruling regarding it. The issue of estoppel having been neither pleaded nor set out in factual allegations, there is nothing presented for us to review. *Service Employees International, Local No. 55 et al. v. Cedar Rapids Community School District,* 222 N.W.2d 403, 408 (Iowa 1974).

■ VI. The trial court held the plaintiff Company was entitled to judgment against the Rudens in the sum of $1,614.85, together with seven percent interest thereon from January 1, 1973. In this issue stated for review, the Rudens assert trial court erred in assessing interest at the rate of seven percent rather than five percent, and further erred in assessing interest from January 1, 1973, rather than from January 31 or February 1, 1973. We are disposed to agree with the position of the defendants in this regard.

With respect to the amount of interest assessed, it is clear trial court should have used the five percent rate. At all times material to the within action, § 535.2, The Code, provided in material part:

"535.2 Rate of interest.

"1. Except as provided in subsection 2 [hereof not applicable to this case], the rate of interest shall be five cents on the hundred by the year in the following cases, unless the parties shall agree in writing for the payment of interest not exceeding nine cents on the hundred by the year:

" * * *

"*b.* Money after the same becomes due."

There was no evidence of any written agreement between the parties with respect to interest, so the above provision governed the case at hand.

Trial court apparently arrived at the seven percent rate by reference to ch. 275, § 1 (1973), Acts of the Sixty-fifth General Assembly 570, now codified as § 535.3, The Code, 1975. That provision relates to interest on money due on judgments and decrees of court. It did not regulate interest on the amount in dispute in the instant action.

As to the question of timing, the general rule is interest runs from the time the money becomes due and payable. *Thomas Truck and Caster Company v. Buffalo Caster and Wheel Corporation,* 210 N.W.2d 532, 536 (Iowa 1973); *Weaver Construction Company v. Farmers National Bank of Webster City,* 253 Iowa 1280, 1292, 115 N.W.2d 804, 811. The plaintiff's bookkeeper testified she did not bill the Rudens for the balance of the work done until February 1 or, perhaps, January 31, 1973. We find that the amount of that bill was not due and payable until February 1. Interest did not begin to run until then and trial court erred to the extent it assessed interest from January 1 through January 31, 1973.

Accordingly, we modify trial court's decree in the above particular.

VII. In their final issue stated for review the Rudens assert trial court erred in dismissing their counterclaim in which they sought judgment against the Company in the amount of $13,000 based upon their allegations the "improvements accomplished by the company were faulty, unsatisfactory, unacceptable and of no value."

We have decided this issue by implication in Division II of this opinion. Further discussion would serve no useful purpose. We hold trial court was correct in dismissing the Rudens' counterclaim.

We therefore modify the decree of the trial court with respect to the matter of interest set out in Division VI above. As so modified, the decree of the trial court is affirmed. Costs of appeal are assessed to appellants.

MODIFIED AND AFFIRMED.