**Clifford CARNICLE, d/b/a Carnicle Construction, Plaintiff and Appellee,**

v.

**George SWANN, Jr., Defendant and Appellant.**

**No. 13291.**

Supreme Court of South Dakota.

Argued May 20, 1981.

Jan. 6, 1982.

Phillip O. Peterson of Frieberg, Frieberg & Peterson, Beresford, for plaintiff and appellee.

Robert E. Hayes of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant; Charles D. Gullickson of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on the brief.

WOLLMAN, Chief Justice.

Appellee sued appellant for the reasonable value of materials and labor expended to remodel appellant's house. The trial court's judgment dismissed appellant's

counterclaim, rescinded the contract and allowed appellee the reasonable value of work performed. Appellant appeals from this judgment. We affirm.

In late 1977 appellant was the successful bidder on a structure that was originally constructed as a place to sell produce and was later remodeled into a dwelling. Appellant had the structure moved onto its present location, a residential lot on West Lotta Street in Sioux Falls. Appellant planned to have the structure remodeled before renting it out or occupying it himself.

In May of 1978 the parties met for the first time at the Lotta Street address to discuss remodeling the house. Appellee is a carpenter and small contractor who had originally built the structure and who had also previously remodeled it into a house. Appellant told appellee that he would be away at school for the summer and that he wanted the house completely remodeled in the meantime. In appellee's words, "[H]e (appellant) asked me what it was going to take to fix the building, and I said $7,000.... [H]e just said, go ahead and go to work." Appellant told appellee to use subcontractors of his own choosing for the plumbing, heating, and electrical work.

Appellant understood this to be a bid for $7,000 for all carpentry, subcontractor labor, and materials. Appellee understood it to be a bid for his labor cost only. The labor performed by appellee pursuant to his bid included straightening the structure on its new foundation, straightening the roof, adding additional length to the walls, replacing and repairing the interior sheet rock, building two porches, building a bathroom, closing off an old garage door, constructing closets and a stairway, closing up a window in the basement, and additional cement and block work. At appellee's verbal request, appellant paid appellee $5,000 in October of 1978 as partial payment on the total cost. Appellee submitted his final bill in November of 1978. The bill represented appellee's total labor cost, slightly over $7,600, plus material and supply expenses, less the amount appellee had already been paid. At this point, when the work was nearly completed, the parties realized that they each had a different understanding of the meaning of the bid. Upon receiving the bill, appellant discharged appellee and hired another contractor to complete the work. Appellee then commenced this action to recover the balance due on his bill.

The first issue is whether the trial court erred in finding that appellee was entitled to rescind the contract on the basis of mutual mistake of fact. SDCL 53–4–9 defines mistake:

> Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:
>
> (1) An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or
>
> (2) Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed.

The requirement of SDCL 53–4–9 that a "mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake," has been interpreted to mean:

> The fact concerning which the mistake was made must be material to the transaction and must not result from the want of such care and diligence as would be exercised by a person of reasonable prudence under the same circumstances and must relate to a present or past fact.

*Nilsson v. Krueger*, 69 S.D. 312, 317, 9 N.W.2d 783, 786 (1943), (interpreting SDC 10.0312, which was recodified as SDCL 53–4–9). See also *Beatty v. Depue*, 78 S.D. 395, 402, 103 N.W.2d 187, 191 (1960). Cf. *McDonald v. Miners & Merchants Bank, Inc.*, 310 N.W.2d 591 (S.D.1981).

The trial court thoroughly considered the issue of negligence before concluding that the evidence established a mutual mistake of fact regarding the terms of the bid. The trial court specifically found that "the mistake was not the product of any negligence on the part of either the Plaintiff or the

Defendant nor the result of fraud or misrepresentation of either party."

 We will not set aside a trial court's findings unless they are clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). After a review of the record, we cannot say that the trial court erred in finding that neither party was negligent in his mistaken understanding of the bid. Consequently, rescission of the contract was an appropriate remedy.*

. The second issue is whether appellee established the reasonable value of the services rendered and materials furnished.

The basic principles of restitution are illustrated in the following excerpt from D. Dobbs, Handbook on the Law of Remedies 261 (1973):

> [T]he plaintiff is not entitled to damages from the defendant who has committed no tort nor breached any contract. He is entitled only to restitution, representing the value of the benefit to the defendant. His costs may represent some kind of evidence of value, especially if it is added that the costs were reasonable, but they do not represent a recoverable item of restitution in themselves.

As stated by the Supreme Court of Iowa, "The proper measure of recovery is the reasonable value of the services rendered and materials furnished, and should be distinguished from actual cost to the contractor." *Olberding Const. Co., Inc. v. Ruden*, 243 N.W.2d 872, 875 (Iowa 1976). See also *Stark v. Stark*, 79 S.D. 178, 109 N.W.2d 904 (1961); *Fehlhafer v. Reiners*, 37 S.D. 289, 157 N.W. 1058 (1916); *Woodford v. Kelley*, 18 S.D. 615, 101 N.W. 1069 (1904); *Caldwell v. Myers*, 2 S.D. 506, 51 N.W. 210 (1892).

Appellee presented evidence of what he paid for all of the materials that were placed in the structure. He and his witness testified regarding the number of hours spent working on the structure and the hourly wage paid to appellee's employees. Appellant called two experts to estimate the reasonable value of the services rendered by appellee. It is clear from the record that the trial court considered the evidence presented by both parties, not merely the evidence of appellee's costs. After reviewing the evidence the trial court concluded that the reasonable value of the work performed and the materials used corresponded to the costs of those items. The record also reveals that the trial court carefully considered the reasonable value issue prior to denying appellant's motion for a new trial.

We conclude that what was said by the Iowa Court in *Olberding Const. Co., Inc. v. Ruden*, supra, is applicable to the case before us. There, the plaintiff sought to recover for the value of work performed on defendant's home. The plaintiff presented the costs of the items of labor, materials, and rental equipment as evidence of value conferred on the defendants. The defendants called two experts who offered their opinions of the value of the work done on the home. The Iowa Court determined that plaintiff's cost was an accurate measure of the benefit conferred upon the defendants. The court stated, "The resolution of the case below clearly depended on matters of credibility . . . . It is obvious from the decision that the trial court gave substantial credence to the evidence introduced by the Company. On the record before us, we cannot say the court was wrong in so doing." 243 N.W.2d at 877.

 Granted that appellee did not call any witnesses to testify regarding the reasonableness of the charges for labor and materials, our review of the record convinces us that the trial court did not err in finding that appellee's costs represented the reasonable value of the benefits conferred upon appellant.

The judgment is affirmed.

---

* SDCL 21–12–2 provides:
 Rescission cannot be adjudged for mere mistake, unless the party against whom it is adjudged can be restored to substantially the same condition as if the contract had not been made.

Because appellant does not contend that the statute bars appellee's prayer for rescission and for recovery on the basis of quantum meruit, we are not disposed to so hold on the basis of our own motion and in the absence of any countervailing arguments.

DUNN and MORGAN, JJ., concur.

FOSHEIM, J., concurs specially.

HENDERSON, J., dissents.

FOSHEIM, Justice (concurring specially).

In footnote 1, the majority decides to ignore SDCL 21–12–2 because it was not argued as a bar to recovery. This court cannot ignore the applicability of a statute simply because it was not argued. This court must decide whether the appellee established the statutory elements of rescission and one of the elements is contained in SDCL 21–12–2. This statute has been interpreted to require the party seeking the rescission to offer to give back what he received under the contract. *Mankey v. Hoyt*, 27 S.D. 561, 132 N.W. 230 (1911).

I concur specially to show that I have considered this statute and have concluded that appellee's failure to offer to restore does not require reversal. This court has recognized that such an offer is unnecessary when the required tender is money, since the amount of the money can be subtracted from the rescinding party's claim. *Main v. Professional & Business Men's Life Ins. Co.*, 80 S.D. 288, 122 N.W.2d 865 (1963). Tender in this case was therefore unnecessary and the trial court properly subtracted from appellee's award what he had received from appellant.

HENDERSON, Justice (dissenting).

I first make the point that appellee-carpenter sued in quantum meruit. How, then, can he substantiate (prove) his damages by costs (bills of materialmen and time cards of his employees)? The trial court entered judgment in favor of the carpenter simply by adding up these costs. This is blatantly incorrect. The carpenter's brief states: "After reviewing the evidence, the [trial] court concluded that the reasonable value of the work performed and the materials included in the structure happened to be the costs of those items." Suit was commenced alleging the reasonable value of the labor performed and materials furnished as being $15,103.15. Appellant paid, prior to suit, the sum of $6,012.66. Although it appears that the judgment (under the carpenter's and the trial court's arithmetic) should have been for the sum of $9,090.49, the judgment rendered was in the amount of $9,081.75. This is a miniscule disparity but I point it out so that the facts are before the reader and the reader is informed as to the manner by which the trial court arrived at its decision.

The carpenter's approach to proving up damages is entirely foreign, if not a defilement, to the theory of quantum meruit. There is not a shred of evidence in this record to establish reasonable value of the services. Bear in mind that the agreement for the value of the services is out the legal window—so to speak—even under the theory of the carpenter. How he can theoretically sneak back in the window, without establishing reasonable value of services, is more than I can understand. On this point alone, I would reverse and remand for a new trial on damages (insufficient evidence). The *Olberding* case, cited by the majority, is tougher against the carpenter than it is for him. The Iowa Court quoted the general rule and then proceeded to write around it due to the applicable evidence.

The principles regarding recovery on the basis of quantum meruit are relatively simple and well settled, as aptly stated in the following excerpt from D. Dobbs, Handbook on the Law of Remedies (1973):

The plaintiff who has built on another's land may have spent quite a bit of money in doing so. He may have bought supplies, such as lumber and brick, paid laborers, and put in some of his own labor. The project may have been well managed, or it may have been poorly managed. The plaintiff may have bought goods or hired contractors at inflated prices, or he may have bargained well and achieved very favorable bargains. His *costs* in putting up the house, then, do not necessarily reflect the value of the benefit it represents to the landowner. This seems a simple point, but it is one that repeatedly causes difficulty. Perhaps the reason is that the plaintiff's

costs would often be a recoverable item if he had an enforceable contract to build the house. In such a case he would ordinarily have an option to recover his expected profit if the defendant breached, or his reliance expense, which is to say, his costs. But this is *damages* or loss to the plaintiff, not restitution, and of course the plaintiff is not entitled to damages from the defendant who has committed no tort nor breached any contract. He is entitled only to restitution, representing the value of the benefit to the defendant. His costs may represent some kind of evidence of value, especially if it is added that the costs were reasonable, but they do not represent a recoverable item of restitution in themselves.

*Id.* at 261 (emphasis in original) (footnote omitted). I maintain that one seeking to recover on the basis of restitution or quantum meruit may recover only the value of services rendered and not his costs; that is, only the amount attributable to a reasonable value for services rendered governs the resolution of this dispute. This principle has been applied by this Court in *Stark v. Stark*, 79 S.D. 178, 109 N.W.2d 904 (1961); *Fehlhafer v. Reiners*, 37 S.D. 289, 157 N.W. 1058 (1916); and *Woodford v. Kelley*, 18 S.D. 615, 101 N.W. 1069 (1904).

In *Olberding*, the plaintiff introduced considerable evidence as to the reasonable value of its services and, after reviewing the evidence, the Iowa Supreme Court affirmed the lower court's judgment in favor of the plaintiff. Notwithstanding its decision, the Iowa Court felt compelled to state: "We do, however, reiterate the principle that recovery in cases such as the one with which we are concerned is based upon the reasonable value of services and materials to the owner and not upon actual cost to the contractor." *Id.* 243 N.W.2d at 878. *Olberding* and this case are distinguishable, however. In this case, not even the carpenter himself testified that the materialmen bills and his employees' time cards were reasonable charges. Dobbs, *Remedies*, states the law applicable to this situation: "The principle in these cases is fair assessment of the benefit actually received. This

cannot be done by examining the contract price, where the parties have a different notion of what that price is and this different notion itself constitutes the basic mistake." *Id.* at 744.

Before reaching the above issue, however, I find myself in disagreement with the rescission allowed by the trial court.

Frankly, a fair reading of the record establishes that the carpenter is simply trying to back out of his deal. The carpenter agreed to remodel a house for a price. He now wants to rescind the contract on remodeling the house and yet wants to affirm the contract to get paid. This is his legal posture: he wants a "kinda half-rescission." One ponders: how do you rescind the remodeling of a house when it is already entirely remodeled? There is simply no way whereby appellant can ever be put back into his original position. It appears to me that the carpenter not only wants a partial rescission but wants it under his own terms. The trial court did not find that appellant could be restored to pre-contract condition, and did not order the carpenter to restore appellant to such condition. SDCL 21–12–2 thus prohibits the trial court from granting rescission.

Certain facts bear relevance to this dispute. The carpenter was familiar with bidding and estimating; appellant was not. Appellant did not know construction, but the carpenter did. And the carpenter gave a figure of $7,000.00 (carpenter: "He asked me what it was going to take to *fix the building*, and I said $7,000.00.") (emphasis mine). The term "fix the building" is more broad and general than "labor." The carpenter's final bill was in excess of $15,-000.00. This amount is more than double the amount that the carpenter stated it would take "to fix the building." It appears to be undisputed that appellant told the carpenter that he wanted to have all the work completed on the house so that it could be ready for occupancy. The following question was asked of the carpenter at trial by appellant's counsel: "I guess what I'm asking, Mr. Carnicle, is this. Did you

understand . . . that he [appellant] wanted the house fixed so he could move in and live in it?" To this question the carpenter replied: "Yes." How, then, could there be a mistake if the carpenter knew what appellant desired? The point is that labor alone would not have readied the house for occupancy. Another relevant fact: the carpenter received $5,000.00 from appellant in October of 1978; one month later, the carpenter astounds appellant with a tremendous bill.

According to the majority, we are considering this basic legal question: should we tolerate a rescission of a contract for a mutual mistake? I subscribe to the thinking of the North Dakota Supreme Court in *Security State Bank of Wishek v. State*, 181 N.W.2d 225, 233–234 (N.D.1975):

> The modern—and, we believe, the better—rule for rescission of a contract for mistake is . . . [that] cancellation should not be decreed against a party whose conduct did not contribute to or induce the mistake and who will obtain no unconscionable advantage therefrom.

Appellant has done no wrong; he is entitled to the benefit of his bargain; he neither contributed to nor induced a mistake; he has been put 'upon by a carpenter in whom he reposed his trust and faith. For all of the above reasons, I cannot join in the majority opinion and would reverse the trial court.