RIGGEN, Respondent, v. LINDLEY, et al, Appellants.

(236 N. W. 281.)

(File No. 6842. Opinion filed April 21, 1931.)

344

*M. A. Brown,* of Chamberlain, for Appellants.

*M. Q. Sharpe* and *L. Bridgman,* both of Kennebec, and *H. L. Bode,* of Pierre, for Respondent.

CAMPBELL, J. Defendants, together with one Young, were associated in owning and operating a threshing machine, using for convenience in the conduct of such business the name "Fairland Threshing Company." They were indebted to Brule State Bank,

and desired to borrow some money for the purpose of retiring said indebtedness, and had requested plaintiff to make them a loan for that purpose. Plaintiff held a $3,100 certificate of deposit issued by Reliance Savings Bank, where all parties did their banking business, and had discussed the situation to some extent with the defendant Powers, who was actively managing the threshing machine business in behalf of himself and associates. Plaintiff had told Mr. Powers that he would loan the defendants the amount necessary to pay their debt to the Brule State Bank provided the Reliance Savings Bank would cash his certificate of deposit. Plaintiff after his conversation with defendant Powers, took his certificate of deposit to the bank and surrendered it, receiving an equivalent credit to his checking account. A day or so later, and on November 13, 1923, plaintiff and defendants met at the Reliance Savings Bank. The banker, Brown, was called in to assist in the proposed transactions. The exact amount which defendants needed to borrow to retire their indebtedness to Brule State Bank was computed at $2,450. Thereupon Brown, the banker, drew a note in favor of plaintiff for that amount, which note was signed by the defendants and given to plaintiff. Brown, the banker, wrote out a check to the order of Fairland Threshing Company for $2,450, which was signed by plaintiff and given to the defendant Powers, who deposited the check in the Reliance Savings Bank on which it was drawn to the credit of the account of the Fairland Threshing Company. The banker, Brown, also wrote out a check on the Reliance Savings Bank for $2,478.72 to the order of W. H. Pratt, president of Brule State Bank, which check was signed in the name of Fairland Threshing Company by the defendant Powers. This check was for the purpose of paying the debt of Fairland Threshing Company to Brule State Bank, and was left at the Reliance Savings Bank for delivery to Mr. Pratt, president of the Brule State Bank, who was to call there for it. Plaintiff and defendants then left the Reliance Savings Bank and apparently knew nothing of further details with reference to the situation until after the Reliance Savings Bank closed for liquidation on November 17, 1923. As a matter of fact, during the interval, Mr. Pratt of the Brule State Bank called at the Reliance Savings Bank and was handed the check drawn to his order by the Fairland Threshing Company. He requested cash therefor, and, the Reli-

ance Savings Bank being unable to pay the check, he refused to accept it. On November 13, when plaintiff gave his check to defendants and defendants deposited said check to the credit of their account and gave plaintiff their note, the Reliance Savings Bank had in cash only $548.68, and on November 17, the day it closed, its cash on hand was $70.08.

Defendants refused to pay plaintiff's note when it came due, and he instituted the present action thereon. At the close of all the testimony a verdict was directed in favor of plaintiff and against the defendants, and, from a judgment thereon and a denial of their application for a new trial defendants have appealed.

As defenses to liability upon the note appellants urge three propositions: First, that there was a conditional delivery of the note; second, that the note was delivered under mutual mistake of fact; and, third, that they received no consideration for the note.

■ ■ With reference to the defense of delivery upon condition, the testimony most favorable to appellants is that of appellant Powers. Powers testified that, when discussing the proposed loan with respondent, he (Powers) said: "I told him that all of us would have to sign the note and he said that he didn't care whether Young signed it or not, but I says, 'I do. If all five don't sign it, I will not sign the note.'" Powers further testified that in the Reliance Savings Bank on November 13, after the note was prepared for signature, he stated: "Well, I am ready to sign it providing Mr. Riggen will agree to get Young's signature on the note. If he won't agree to get Young's signature on the note, I won't sign it." And that thereupon respondent said, "I will get him." Powers further testified that, before he signed the note, respondent stated in the presence of all the appellants that he would get Young to sign the note, and further that, if respondent had not stated that he would get Young's signature on the note, he (Powers) would not have signed the note. The testimony of the other appellants is similar in substance. We are of the opinion that this evidence is insufficient to establish delivery of the note upon condition. Appellants do not claim any condition by express words, and we do not think any condition can be inferred from the circumstances. There was an immediate and unconditional delivery of the consideration for the note to the appellants, with

the expectation on the part of all that they would immediately pay out and disburse the same. If it is to be held that a note is delivered upon condition, it must appear, either by definite statement or by clear inference from the circumstances, that it is mutually understood and intended that the instrument is not to be valid or binding or to have effect as a note until the performance of the condition. That situation does not exist here, taking the testimony most favorable to appellants, and we do not think the trial court erred in refusing to submit to a jury the question of conditional delivery. McCormick Harvesting Machine Co. v. Faulkner, 7 S. D. 363, 64 N. W. 163, 58 Am. St. Rep. 839; Dimock State Bank v. Boehnen, 46 S. D. 50, 190 N. W. 485.

█ On the question of mutual mistake of fact, appellants do not claim any fraud, misrepresentation, or deceit on the part of respondent, and they admit that respondent did not know the actual condition of the bank to be as bad as it in fact was any more than did the appellants. It appears in this case that neither appellants nor respondent had knowledge of the actual condition of the bank. The bank was open and conducting business apparently as usual, and the mental attitude of all the parties seems to be fairly disclosed by the testimony of respondent, who testifies that he did not say anything to the banker as to whether there were funds on hand to pay any check which he might give, and that he "just assumed that everything was regular and that they would have the money—didn't think anything to the contrary." That likewise appears to have been the frame of mind of appellants when, upon receiving respondent's check, they made no effort to cash the same and made no inquiry as to whether they could cash it, but simply indorsed and deposited it to the credit of their own account. All of the parties had an equal opportunity to discover the facts, and none of them made any inquiry. None of them were in fact actually advised as to the condition of the bank, but all of them were equally conscious of their lack of knowledge. Concededly, if all parties had known the facts, they would not have conducted the transaction between themselves in the fashion which they did. Nevertheless there is not in this case any such mistake of fact as can form the basis for any of the parties to be relieved from the transaction.

The rule is stated in Pomeroy's Equity Jurisprudence (4th

Ed.) § 839, as follows: "Mistake, on the other hand, is internal; it is a mental condition, a conception, a conviction of the understanding—erroneous, indeed, but none the less a conviction—which influences the will and leads to some outward physical manifestation. * * * Its essential prerequisite is ignorance. It is distinguished from fraud, fraudulent representations, or fraudulent concealments by the absence of knowledge and intention, which in legal fraud are actually present, and in constructive fraud are theoretically present, as necessary elements. It is also distinguished from that inattention or absence of thought which are inherent in negligence. The erroneous conception or conviction of the understanding which constitutes the equitable notion of mistake has nothing in common with negligence; equity will not relieve a person from his erroneous acts or omission resulting from his own negligence."

The consideration of this claim of mutual mistake of fact brings us also to the third claim of the appellants, that they should be relieved from payment of the note in question because they received no consideration therefor, and in fact these two lines of argument run into one another.

■ All parties to this transaction know that the purpose of signing the note sued upon was to enable appellants to acquire from respondent money or moneys worth wherewith to discharge the debt of appellants to Brule State Bank. Appellants intended to borrow money of respondent, and respondent intended to loan money to appellants. It is undoubtedly true that appellants would have been entitled to demand cash from the respondent, but they did not do so. Respondent tendered to appellants his check upon the Reliance Savings Bank, and they accepted and received it. Even then the check was not payment in the hands of appellants. They could have presented the check to the bank upon which it was drawn for payment, and, if it was dishonored and payment refused, they could have avoided liability upon the note. Appellants, however, did not see fit to demand cash from respondent, nor did they see fit to make any attempt to turn respondent's check into cash. Most of the business of this country is transacted by means of bank credits and not by cash. Appellants appeared to have been perfectly willing to assume the validity of the bank credit in this case.

■ It is the undoubted general rule that, if the payee of a check, instead of demanding and receiving cash for the check

from the drawee bank, receives a deposit slip or credit therefor, the transaction amounts to payment of the check so far as the drawer is concerned, and he is discharged if he has credit with the drawee and if the drawee has funds sufficient to meet the check and would pay in cash if demand were made. See note, 52 A. L. R. 994, at page 999. We do not believe the situation is changed by the fact that the drawee bank did not have sufficient cash on hand to meet the check, where it does not appear that the maker of the check had knowledge of that fact, and where it does not appear that the payee was induced to accept a bank credit instead of demanding cash by any fraud, deceit, or misrepresentation of the maker of the check.

See First National Bank v. Mammoth Blue Gem Coal Co., 194 Ky. 580, 240 S. W. 78; Cohen v. First National Bank Nogales, 22 Ariz. 394, 198 P. 122, 15 A. L. R. 701; First National Bank v. Burkhardt, 100 U. S. 686, 25 L. Ed. 766; American National Bank v. Miller, 185 F. 338, 107 C. C. A. 456; Montgomery County v. Cochran, 126 F. 456, 460, 62 C. C. A. 70, where the court said: "When, in the absence of fraud, a genuine check is presented in bank and received as a deposit, the legal effect is that the check is paid. The transaction is the same as if the cash had been handed the depositor, and by him returned to the bank. This effect cannot, we think, depend on there being cash enough in the bank at the moment the check is presented to pay it. We find no such limitation of the doctrine in the cases. Banking, we know, is based largely on a system of credits. Few banks, when entirely solvent, could pay in cash checks if presented at once for all liabilities to depositors. Cash is retained in the till sufficient for the transaction of business, with the knowledge of its usual course— that the business is based largely on a system of credits. So the legal effect given the transaction cannot, we think, be limited by the amount of actual cash that Josiah Morris & Co. had on hand at the date of the deposit of the check."

None of the parties in this case knew or were chargeable with knowledge of the actual condition of Reliance Savings Bank. None of them made inquiry. All of them assumed that the bank was ready, able, and willing to pay checks upon demand. Respondent tendered his check to appellants, and appellants accepted the same. The check represented a certain amount of bank credit and a

certain amount of indebtedness due from the bank to respondent. Appellants made no effort to turn this credit into cash and made no inquiry as to whether they could do so, but deposited the check with the drawee bank to their own credit. By so doing, appellants indicated their entire willingness to accept the credit of the Reliance Savings Bank in lieu of cash. Appellants, by their own conduct, assumed as between themselves and respondent, and without any necessity for so doing, the risk that the credit of the Reliance Savings Bank might not be as good as they supposed it to be.

Regardless of any technical question of payment of respondent's check, the facts indicate a completely executed novation. At the beginning of the transaction, Reliance Savings Bank owed respondent $2,450. When the transaction was concluded, respondent had a claim against appellants for this $2,450, and his claim against the bank was diminished to that extent. The bank owed the $2,450 to appellants instead of owing it to respondent. Appellants owed respondent $2,450, and had that amount due them from the bank. Appellants were entirely satisfied to accept, as the consideration for their note, and to continue to hold, a claim against the Reliance Savings Bank. They were in no manner deceived or misled by respondent. They will not now be permitted to avoid payment of their note merely because the thing which they accepted and received therefor by their own voluntary act is discovered to be not as valuable as they assumed.

Appellants rely upon the case of Dille v. White, 132 Iowa, 327; 109 N. W. 909, 10 L. R. A. (N. S.) 510. An examination of that case shows that it is quite different upon the facts from the instant case. In any event we think the sounder legal view is therein expressed in the dissenting opinions of Mr. Justice Deemer and Mr. Chief Justice McClain. See, also, Security National Bank v. Old National Bank, 241 F. 1, 154 C. C. A. 1.

The judgment and order appealed from are affirmed.

MISER, C., sitting in lieu of ROBERTS, J., disqualified.

POLLEY, P. J., and WARREN, RUDOLPH, and MISER, JJ., concur.