BEATTY et al., Appellants v. DEPUE et al., Respondents

(103 N.W.2d 187)

(File No. 9795. Opinion filed May 17, 1960)

Rehearing denied June 15, 1960

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Plaintiffs and Appellants.

**T. R. Lehnert** and **Bangs, McCullen & Butler,** Rapid City, for Defendants and Respondents.

RENTTO, J.   This litigation grows out of a contract for deed entered into on April 2, 1956 under which the plaintiffs agreed to convey to the defendants a mountain acreage about eight miles west of Custer, South Dakota, generally referred to as the Bellemare Ranch. The defendants made the payment required on the execution of the contract and went into possession of the premises, after which they made the payment due May 1. Subsequently they discovered that three portions of the ranch did not belong to the plaintiffs and could not be conveyed by them. On December 2, 1957 they gave notice of rescission of the contract and tendered restitution.

After giving notice of their intention to do so on April 23, 1958, plaintiffs on June 4, 1958 commenced this action to foreclose the contract. Defendants in addition to denying plaintiffs' cause of action counterclaimed for rescission of the contract and offered to do equity. The court granted the rescission because of a unilateral mistake as to the land that was to be conveyed and adjusted the equities by requiring repayment to the defendants of the sums paid by them under the contract with interest and the value of the improvements made on the premises. It also determined the value of the use and occupation of the premises and ordered this offset against the amount due the defendants. This balance was made an equitable lien against the premises.

In appealing from such judgment plaintiffs' principal contentions are that (1) the findings that there was a unilateral mistake; that defendants' negligence did not contribute to it; and that they would not have executed the contract except for this mistake are not sustained by the clear

preponderance of the evidence (2) that the unilateral mistake found by the court does not constitute grounds for rescission and (3) that the defendants did not act with the required promptness upon discovering their mistake.

The fee owned land of the ranch consists of three parcels: Homestead Entry Survey 495, Lode Mining Claims designated as Mineral Survey 1968 and the Eldorado Placer mining claim designated as Lot No. 1297. They contain about 522 acres of which about 100 acres are tillable, and make up a unit that is uniquely irregular in shape. 1968 runs generally north and south and is about two miles long with an average width of approximately one-fourth mile. It constitutes the easterly portion of the ranch. To the west of it is higher ground, apparently a mountain or a hill, which is not a part of the ranch. 495, shaped like an arc that bends south, lies northwest of this elevated area but its northeasterly extremity does not connect up with the north end of 1968. This hiatus is government land about three-eighths of a mile wide at its widest portion and about one-eighth of a mile wide at its narrowest part. 1297 which lies to the southwest of the elevated area is the most irregular of these three tracts. It is shaped like an arc that bends north. Its southeastern part, which makes up the bulk of its area, connects up with the southwesterly extremity of 1968. From that a fingerlike projection extends northwest within one-half mile of the south end of 495. Between these latter points is a sliver of government land which was a part of the ranch unit by lease. Probably the best way to describe this unit is to say that it is a rough semicircle with 1968, on the east, the diameter. The hill or mountain which separates this diameter from the rest of the semicircle is about a mile east and west and a mile and one-half north and south in its widest area. Speaking generally it may be said that the ranch encircles the elevated area at its base. In other words, it runs around the mountain.

While the Beattys, residents of Nebraska, are the owners of the ranch, Breslin had an interest in it and had resided thereon for about 50 years when this sale was initia-

ted. He made a deal with one Alseth to find a buyer. In March of 1957 the defendants in company with Alseth went to the ranch to look it over. There they met Breslin and in company with him and under his guidance they were shown the ranch during the course of which they were driven over and near parts of it and in a few places viewed it on foot and looked over the buildings. At that time it was agreed that the defendants would return in a week and if everything was satisfactory an agreement for its purchase would be entered into. They returned at the agreed time but because Breslin was ill nothing was done on that occasion.

A week later they returned again and while Breslin was in a convalescent home he was well enough to do business. At his suggestion the defendants went to attorney Hoagland who had previously done legal work for the plaintiffs. The contract sued on was drawn and signed by the defendants and Breslin on that date, after which it was sent to the other plaintiffs for execution. They returned it to attorney Hoagland who put it in escrow along with the deed to the premises. The defendants then took possession of the premises on April 17, 1956. In the following September defendants in the course of operating the ranch discovered that the fence on the south end of the property enclosed an area of Forest Service land. They immediately notified attorney Hoagland. Early the next year they discovered that there was a hiatus in the northern portion of the ranch between 495 and 1968 which was Forest Service land. This they also promptly reported to the attorney. In the spring of that year they discovered that an area of the ranch joining 1968 on the north did not belong to the plaintiffs. This was similarly reported.

In this state it is provided that a party to a contract may rescind the same if his consent was given by mistake. SDC 10.0802. Mistake of fact is defined in SDC 10.0312(2) as consisting in belief in the present existence of a thing material to the contract which does not exist. It seems to us that these statutes authorize rescission for a unilateral mistake of fact. Any doubt as to the validity of this view is removed

when we consider SDC 10.0313 which states when a mistake of law renders consent to a contract voidable. That section specifically provides that the misapprehension of law must be by all parties or if by only one party the other must be aware of it. The mistake of fact which renders consent to a contract voidable is not similarly circumscribed.

Our statutes also declare that the consent of a party to a contract must be free, SDC 10.0301(1), and that consent which is not free is not void but voidable and may be rescinded in the manner prescribed by the statute on rescission. SDC 10.0302. We also have the further provision that an apparent consent is not real or free and is voidable when obtained through mistake, SDC 10.0303(4), and that consent is deemed to have been obtained through mistake only when it would not have been given except for such mistake. SDC 10.0304. A mistake caused by the neglect of a legal duty on the part of the person making it is not a mistake of fact. SDC 10.0312.

■■ Apparently rescission is permitted where the mistake of fact is unilateral on the theory that because of such mistake there was no meeting of the minds of the parties under the conditions actually existing. Where the mistake of fact is mutual this court has said that no contract results because there is no meeting of the minds. Iowa Loan & Trust Co. v. Schnose, 19 S.D. 248, 103 N.W. 22; Nilsson v. Krueger, 69 S.D. 312, 9 N.W.2d 783. It is obvious that the same situation results when the mistake of fact is unilateral. Annotation 59 A.L.R. 809. See also Fransen v. State, 59 S.D. 432, 240 N.W. 503; 12 C.J.S. Cancellation of Instruments § 27; and 9 Am.Jur., Cancellation of Instruments, § 33; Williston on Contracts Rev. Ed. § 1578; Corbin on Contracts § 608.

■■ As to the determinations that there was a unilateral mistake not caused by defendants' negligence and that except for this mistake they would not have executed the contract, it is the claim of the plaintiffs that they are not supported by a clear preponderance of the evidence. See Byrne v. McKeachie, 29 S.D. 476, 137 N.W. 343. In

our review in this regard we must accept that version of the evidence, including the inferences which can be fairly drawn therefrom, which is favorable to the trial court's action. This is so because it is for the trial court to select the testimony and draw the inferences which he relies on. Because his participation in the trial reveals to him many things that are helpful and sometimes essential in deciding fact issues, it is presumed that his findings are correct. Consequently, we are not free to disturb them unless satisfied that they are contrary to a clear preponderance of the evidence.

■ At the conclusion of the testimony the defendants suggested that the court "view the premises in order to determine the materiality of what has been testified to as to the boundaries." This the court did. While eminent authorities consider knowledge derived from a view as evidence, Wigmore on Evidence, 3rd Ed., § 1168; McCormick on Evidence, p. 391, this court does not so regard it. However, we have held that it does enable the trier of facts to more satisfactorily weigh the evidence given in court and is of assistance to him in determining the issues of fact. Weidmeier v. Edelman, 75 S.D. 29, 58 N.W. 2d 306. Accordingly, it too is a factor to be borne in mind in our assessment of the sufficiency of the evidence.

That the view of the premises was of assistance to the court in determining the issues in this case is clear. In his memorandum decision in referring to the omitted area on the south end of the ranch he wrote:

> "From my own view of this tract I was impressed by how easily such a misunderstanding could arise as there is nothing in the physical appearance of that tract to indicate where the boundaries of the deeded land are since the fence encloses both the deeded and forest service land."

In view of the irregularity of the boundaries of the ranch and the fact that it lies in an area of mountains and canyons

we are satisfied that the view by the court was equally helpful in its determination of the other fact issues involved.

We think the findings last mentioned are adequately supported by the record. Depue testified unequivocally that he would not have executed the contract but for the mistake as to the land on the south end of the ranch and the area between 495 and 1968 on the north perimeter of the premises, and it would be difficult to find to the contrary from this record. The testimony of both Alseth and Depue is to the effect that Breslin led them to believe that both of these areas were included in the ranch. They were entitled to rely on these representations. Roberts v. Holliday, 10 S.D. 576, 74 N.W. 1034; Rasmussen v. Reedy, 14 S.D. 15, 84 N.W. 205. Incidentally the corners of the various areas which apparently are indicated by mounds of stone were not pointed out to the defendants nor does it appear that they were seen by them. Their inspection under these circumstances would reasonably lead them to believe that the ranch consisted of the area over which plaintiffs appeared to be exercising dominion.

█ The requirement of SDC 10.0312 that a "Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake", has been interpreted to mean that it "must not result from the want of such care and diligence as would be exercised by a person of reasonable prudence under the same circumstances." Nilsson v Krueger, supra [69 S.D. 312, 9 N.W.2d 786]. Or as it is written in Grymes v. Sanders, 93 U.S. 55, 23 L.Ed. 798, "the party complaining must have exercised at least the degree of diligence which may be fairly expected from a reasonable person."

Pertinent to this the trial court made the following findings:

"The mistake referred to in Paragraph I hereof was was not the product of any negligence on the part of the defendants nor of any fraud on the part of plaintiffs. Rather, it arose from an honest misunderstanding on

the part of defendants upon the view of the land with the plaintiff Breslin, acting as agent for the other plaintiffs, prior to execution of the contract.

"Breslin was very familiar with the boundaries of the land because he had lived on it for many years and this was defendants' first visit to the ranch. In conducting the defendants on this view of the ranch, he did not show them the actual location of the corners of the ranch in the areas about which the misunderstandings arose. The physical appearance of these areas is such that there neither is nor was anything that would indicate to persons unfamiliar with the ranch boundaries where they were as there were no distinguishing marks or terrain features which would show the ranch boundaries in these areas and there were no fences on the dividing lines. Thus from the general remarks made by Breslin concerning location of boundaries in these areas it was easy for the misunderstanding to arise."

If it be thought that the legal description of these tracts, which were of record, should have given the defendants notice of their boundaries, it is proper to observe after an examination of these in the respective patents, that they are so complex as to be of no help in this regard until run out and staked on the ground by a surveyor.

Whether a mistake concerns a thing material to the contract must of necessity depend upon the facts and circumstances in the situation being considered. Clearly it is not such a mistake if it concerns only an incidental matter. It must be so fundamental in character that because of it the minds of the parties did not meet. School District of Scottsbluff v. Olson Construction Co., 153 Neb. 451, 45 N.W.2d 164. One of the most frequently cited cases in this field, Grymes v. Sanders, supra, states the rule thus:

"A mistake as to a matter of fact, to warrant relief in equity, must be material, and the fact must be such that it animated and controlled the conduct of the party. It must go to the essence of the object in view, and

not be merely incidental. The court must be satisfied, that but for the mistake the complainant would not have assumed the obligation from which he seeks to be relieved."

If it can reasonably be said that the mistake involved had this effect on the mistaken party then it is a mistake concerning a thing material to the contract.

The record does not indicate the amount by which these mistakes reduced the acreage of the ranch nor does it disclose whether or what part of these areas are tillable or untillable land. However, it is apparent that they did contain some of the tillable land. Neither does it show the extent to which they reduced the value of the ranch. Nevertheless, this reduction of acreage is a matter which the trial court had a right to consider on the question of the materiality of these mistakes, especially so since the tillable area of the ranch as defendants mistakenly believe it to be, is rather small.

The most serious feature in this connection is the fact that the mistake as to the area in the north part of the ranch between the eastern extremity of 495 and the western boundary of 1968 severed that portion of the ranch. Across this gap ran a road used in the operation of the ranch in going from the eastern to the western part in its northern reaches. From the record it is fairly inferable that to accomplish such transfer without this road one would have to go south along the eastern part of the ranch to its southern extremity and then north along the western area, traveling a distance between four and five miles. That this mistake would seriously affect the operational utility of the ranch is obvious. Because of his view of the premises and the surrounding terrain the trial court was in a much better position to evaluate the impact of this feature than are we. In the totality of the circumstances here existing we are unable to say that the finding of materiality is not sufficiently supported.

■ Our rule concerning diligence in seeking rescission is spelled out in SDC 10.0804. That section states as follows:

> "Rescission, when not effected by consent can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

> "(1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, undue influence, or disability, and is aware of his right to rescind."

Before one is under any duty to act he must have discovered the facts entitling him to rescind and be aware of his right to rescind. Bancroft v. Woodward, 183 Cal. 99, 190 P. 445; McCray v. Title Ins. & Trust Co., 12 Cal.App.2d 537, 55 P. 2d 1234; Gedstad v. Ellichman, 124 Cal.App.2d 831, 269 P. 2d 661. Or putting it another way, our statute reads that the mistaken party "must rescind promptly upon discovering the facts which entitle him to rescind, if he * * * is aware of his right to rescind."

■ In September 1956 defendants discovered that the area on the south end was not a part of the ranch. After this they made the payment due December 1, 1956. In our view this payment should not defeat their right to rescind because when it was made they had not discovered that there was a gap in the north perimeter of the ranch. Early in 1957 they made the discovery as to this area in the north of the premises between 459 and 1968. This is the important ground of their reason for rescinding. After this they made no further payments. Very soon thereafter, about taxpaying time, they became suspicious about the other area on the north. Their suspicions were confirmed when they talked with the owner of it in the summer of 1957. As to these matters the court made this finding:

> "The contract for deed above referred to was drafted by an attorney at Custer, South Dakota, who had done prior legal work for the plaintiffs and at the suggestion of plaintiff Breslin she was engaged to draft the contract for deed. It was understood by the parties at the time of the signing of the contract that a deed was

to be placed in escrow with the attorney covering the land described in the contract and that the defendants were to make all payments required under the contract to the attorney and the defendants did, in fact, make the payments under the contract to the attorney, who, in turn, transmitted the payments to the plaintiffs. The defendants discovered these mistakes referred to in Paragraphs I and II hereof over a considerable period of time. As each mistake was discovered they promptly notified attorney Hoagland who drafted the contract and was acting as escrow agent. Under the circumstances, defendants were justified in assuming that attorney Hoagland would promptly notify plaintiffs which she did in some instances. These complaints eventually brought about the arrangement by the attorney for a meeting between the defendants and the plaintiff Breslin in the summer of 1957. The purpose of this meeting was to discuss the complaints of the defendants regarding these mistakes. Although the plaintiff Breslin had indicated that he would attend such meeting, he failed to so attend. The defendants refused to make the payments due under the contract on December 1, 1957 and on or about December 2, 1957, gave the plaintiffs notice of the rescission of the contract for deed. In view of these facts and on the basis of the entire record, the court finds that the defendants brought this action for rescission of the contract with reasonable promptness and that they were not guilty of laches or unreasonable delay in so doing.

Plaintiffs contend that the defendants delayed too long after such discovery before taking action. This argument overlooks the second requirement of our statute— awareness of their right to rescind. Accordingly, we must consider whether they acted reasonably in becoming aware of their right to rescind. A failure to so act is a waiver of the right to rescind. When the first two complaints were made to attorney Hoagland, Mr. Depue testified that she told him in effect there was nothing he could do about it and that he would have to take the ranch as it was. He also said

that he thought that maybe she was right. Apparently the attorney informed Breslin of these complaints because in September 1957 he came to the ranch to discuss these matters and their possible adjustment. Nothing was done on this occasion except to agree that they would meet at the attorney's office the following week.

Breslin's failure to attend that meeting apparently convinced the defendants that nothing could be accomplished by negotiation because shortly after that they sought the aid of counsel. This counsel's investigation of the matter progressed to the point that he got the abstracts examined in November 1957. Their notice to rescind was served rather promptly after that. In view of the statements made to the defendants by the attorney when they notified her of the first two items of mistake and the apparent willingness of Breslin to promptly attempt a settlement of their differences, we think their delay in engaging counsel was justified. Fedorenko v. Rudman, N.D., 71 N.W.2d 332. The record does not suggest that they should have been aware of their right to rescind without securing legal advice. Nor do we think the time from then until they notified plaintiffs of their decision to rescind unreasonable. The trial judge with his background of the trial, especially his opportunity to observe the parties, is in a better position than are we to make these evaluations. Accordingly, we think this finding too must stand.

In view of our conclusions on the matters reviewed do not reach the other questions presented by the assignments of error.

Affirmed.

All the Judges concur.