Al McDONALD, Plaintiff and Appellant,

v.

MINERS & MERCHANTS BANK, INC., Defendant and Appellee.

No. 13268.

Supreme Court of South Dakota.

Argued May 21, 1981.

Decided Sept. 30, 1981.

Rehearing Denied Nov. 6, 1981.

George A. Bangs of Bangs, Mc Cullen, Butler, Foye & Simmons, Rapid City, for plaintiff and appellant.

Robert A. Amundson of Amundson & Fuller, Lead, for defendant and appellee; Roger Tellinghuisen of Amundson & Fuller, Lead, on brief.

WOLLMAN, Chief Justice.

Appellant sought damages from appellee for breach of a purchase agreement. In its amended answer and counterclaim, appellee asked that the agreement be rescinded because consent to the agreement was based on a mistake of fact. The trial court found for appellee and entered judgment rescinding the purchase agreement. We reverse and remand.

Appellee is a banking corporation with its principal place of business at Lead, South Dakota. On August 5, 1976, appellee entered into a written agreement to sell to one Dennis P. Casey the old City Hall building in Rapid City for $36,500. Casey paid $500 to appellee, the balance was due on closing.

Both parties knew that a corrective deed from a third party realtor was necessary to provide marketable title, and both believed that such a deed could be obtained. On October 18, 1976, having failed to get the corrective deed from the realtor, appellee wrote to Casey and proffered return of the $500 earnest money. Casey refused to accept the money.

On May 10, 1977, appellant obtained a written assignment of Casey's interest in the purchase agreement. Appellee then offered the earnest money to appellant, who also refused to accept it and instead demanded performance or damages.

The uncontroverted evidence shows that appellant eventually purchased the property and suffered damages in the amount of $25,022.31. Appellee's answer alleged the mutual knowledge of the title problems.

In support of its request that it be relieved of its obligation under the agreement by reason of mistake, appellee alleges that two mistakes were made. First, that at the time the agreement was executed, both parties believed that a third party would furnish a corrective deed necessary to perfect the title. Second, that its president understood that the writing contained an "out" in the event the corrective deed was not obtained. We will consider these allegations in turn.

■ The belief of both parties that a third person would furnish a corrective deed was not a mistake concerning the present or past existence of a fact material to the agreement. It was a shared assumption that a stranger to the agreement would perform future acts for the benefit of the parties to the agreement.

A party may unilaterally rescind an agreement if his consent was given by mistake. See SDCL 53–11–2(1). Mistake is defined in SDCL 53–4–9:

Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

(1) An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

(2) Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed.

The future actions of a third party cannot be accorded the status of fact, past or present. The belief that a third party would execute a corrective deed was neither a belief in the present existence of a thing material to the contract which does not exist, nor was it a belief in the past existence of a thing which has not existed. SDCL 53–4–9 does not contemplate the existence of a mistake having to do with future events.

An analogous situation was presented to this Court in *Riggen v. Lindley*, 58 S.D. 343, 236 N.W. 280 (1931). In that case a loan was made, both parties assuming that a check drawn upon the lender's bank would be honored and paid on presentation. The bank closed, however, and did not pay the check. When a party to the transaction sought to be relieved of the obligation to repay the note on the basis of a mutual mistake of fact, this Court rejected the defense stating, "there is not in this case any such mistake of fact as can form the basis for any of the parties to be relieved from the transaction." 58 S.D. 343, 347, 236 N.W. 280, 282. We conclude, therefore, that appellee has no valid claim for rescission on the basis of the first alleged mistake.

■ Turning, then, to the second alleged mistake of fact, at trial the president of appellee bank was permitted to testify that he understood section 2(a) of the agreement allowed the bank to back out of the agreement in the event the realtor did not give the deed necessary for title. Section 2(a) provides in pertinent part:

... [T]hat in the event the Seller is unable to perform this agreement for any reason, or in the event that the Seller is unable to convey good and merchantable title as herein defined, then the aforesaid sum of $500.00 shall be forthwith returned by Seller to Buyer upon demand, and this agreement shall at the option of the Buyer be declared void and of no force and effect.

We must start from the basic premise that when parties reduce an agreement to writing and execute it, such writing is entitled to enforcement in accordance with its terms and cannot be altered by oral testimony. This is a matter of substantive law and is codified as SDCL 53–8–5. This Court stated the rule in *Eggers v. Eggers*, 79 S.D. 233, 238, 110 N.W.2d 339, 342 (1961), as follows: "Oral negotiations or agreements which preceded or accompanied the execution of a written contract may be employed to explain its uncertain expressions but, except where reformation is sought, not to contradict and nullify its express terms" (citations omitted).

The written agreement was presented to, read, and executed by appellee's president. Nevertheless, over objection, the trial court permitted appellee's president to testify about conversations he had had with Mr. Casey and Mr. Casey's attorney to the effect that section 2(a) would give appellee an "out" in the event the realtor did not supply the corrective deed. On cross-examination, appellee's president admitted that Mr. Casey's attorney did not deceive him into believing something that was not true.

The written agreement was clear, complete, and unambiguous in its terms in that it gave only the buyer the option to void the agreement. Neither duress nor fraud was alleged, nor was a material mistake of fact apparent. Under these circumstances the parol evidence rule as codified by SDCL 53–8–5 precludes a signatory of a written agreement from asserting that he understood it to contain provisions that it did not contain.

Any mistake regarding the meaning of this unambiguous written agreement stemmed from appellee's neglect of its legal

duty to read and understand the clear import of section 2(a). In *Riggen v. Lindley*, supra, this Court explained the legal difference between mistake and negligence,

> (Mistake) is . . . distinguished from that inattention or absence of thought which are [sic] inherent in negligence. The erroneous conception or conviction of the understanding which constitutes the equitable notion of mistake has nothing in common with negligence; equity will not relieve a person from his erroneous acts or omissions resulting from his own negligence.

58 S.D. at 348, 236 N.W. at 282, (quoting 3 J. Pomeroy, *Equity Jurisprudence* § 839 (4th ed. 1918), now found in 3 J. Pomeroy, *Equity Jurisprudence* § 839 (5th ed. 1941)). The requirement of SDCL 53–4–9 that a "[m]istake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake," has been interpreted to mean:

> The fact concerning which the mistake was made must be material to the transaction and must not result from the want of such care and diligence as would be exercised by a person of reasonable prudence under the same circumstances and must relate either to a present or past fact.

*Nilsson v. Krueger*, 69 S.D. 312, 317, 9 N.W.2d 783, 786 (1943), (interpreting SDC 10.0312, which was recodified as SDCL 53–4–9). See also *Beatty v. Depue*, 78 S.D. 395, 402, 103 N.W.2d 187, 191 (1960). We cannot say that appellee's president was not able to read and understand for himself the clear import of section 2(a). The test is whether his action conformed to the prudent person standard of care. In the light of all the circumstances we cannot say that in this case that standard of care was met. See *Rochholz v. Farrar*, 547 F.2d 63 (8th Cir. 1976).

The judgment is reversed, and the case is remanded to the circuit court for entry of judgment in favor of appellant in the amount of the undisputed damages, plus interest and costs.*

DUNN and HENDERSON and FOSHEIM, JJ., concur.

MORGAN, J., concurs specially.

MORGAN, Justice (concurring specially).

I concur specially because I disagree with the manner in which the majority disposes of the counterclaim issue, although not on the ultimate result.

Appellant commenced this action as an action at law for damages. The appellee responded with certain affirmative defenses and counterclaimed for equitable rescission. Indeed, appellee's affirmative defense, mutual mistake of fact, appears to be more appropriately dealt with on the equitable side of the court. Certainly, we have always treated the action for rescission by the court under SDCL 21–12 as an equitable action. See, e. g., *Main v. Professional and Business Men's Life Ins. Co.*, 80 S.D. 288, 122 N.W.2d 865, 867 (1967); *Purcell v. International Harvester Co.*, 37 S.D. 517, 159 N.W. 47 (1916). Although generally we have dispensed with the distinction between actions at law and equitable actions, SDCL 15–6–2, we continue to treat them differently for certain purposes at trial; e. g., a right to a jury trial on the legal side, S.D. Const. art. VI, § 6, and a court trial on the equitable side. How then can we possibly say that a pleading seeking equitable relief is merely an affirmative defense to an action at law?

However, this would not cause me to uphold the trial court's action in granting judgment for the appellees on the counter-

---

* Appellee contends that since no responsive pleading was submitted to that portion of its answer labeled "counterclaim," the trial court was correct in finding that the facts averred therein were admitted as true. We have carefully examined appellee's amended answer and counterclaim and find that there is no counterclaim in fact. A reply, therefore, was not nec-

essary. See 5 C. Wright and A. Miller, Federal Practice and Procedure § 1184, at 16 (1969): "If a party labels as a counterclaim matter that actually constitutes a defense, a reply technically is improper because there is no counterclaim in fact. . . ." See also *Horsford v. Romeo*, 407 F.2d 1302 (3rd Cir. 1969).

claim. Admittedly, failure to reply is by statute an admission of the *averments* in a pleading to which a reply is necessary. SDCL 15–6–8(a). But even taking appellee's averments to be true, I would still reverse the trial judge because the facts do not support the relief requested and granted for all of the reasons so clearly spelled out by the author in the majority opinion. Simply stated, the mistake averred in the counterclaim was not related to a past or present fact. Since, here, this is essential to maintain an action for either equitable or legal rescission, I would join in the majority's reversal.