HOME BUILDING & LOAN ASSOCIA-
TION, a South Dakota corporation,
Plaintiff and Appellant,

v.

PERPETUAL SAVINGS & LOAN ASSO-
CIATION OF RAPID CITY, SOUTH
DAKOTA, Defendant and Appellee.

No. 13953.

Supreme Court of South Dakota.

Argued April 19, 1983.

Decided Sept. 21, 1983.

Charles B. Kornmann of Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel, Aberdeen, for plaintiff and appellant; Ann C. Jones of Banks & Johnson, Rapid City, on brief.

Thomas W. Stanton of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendant and appellee.

MORGAN, Justice.

This appeal arises from an action for breach of contract filed by Home Building & Loan Association, appellant (Home Building), against Perpetual Savings & Loan Association, appellee (Perpetual). Perpetual counterclaimed for rescission of the contract and the trial court held the contract was rescinded. Home Building appeals and we affirm.

On March 30, 1978, Tom Aman (Aman) and attorney Dennis Maloney (Maloney), stockholders and directors of Home Building, located in Aberdeen, South Dakota, and Robert Brezina, President of Perpetual, located in Rapid City, South Dakota, met in Aberdeen to discuss the possibility of Perpetual purchasing the stock of Home Building. Perpetual wanted to establish a branch savings and loan office in Aberdeen. At that time, existing law [1] prohibited Perpetual from establishing a branch outside its lending area of Rapid City. Accordingly, the only way Perpetual could set up a branch office in Aberdeen was to purchase the charter of a savings and loan association already in existence or attempt to get a new charter. By purchasing Home Building's stock, Perpetual could open an office in Aberdeen under Home Building's char-

ter. The law prohibiting Perpetual from establishing a branch office in Aberdeen was repealed by the South Dakota Legislature in February 1978.[2] The record reflects there is some dispute as to what transpired at this meeting. This will be discussed in detail later as necessary.

Subsequent to this meeting, Perpetual made an offer to purchase the stock of Home Building on April 4, 1978. Home Building gave notice of acceptance to Perpetual on April 18, 1978. In June 1978 Aman, a member of the Board of Directors for Home Building, went to Perpetual's office in Rapid City to discuss the purchase. At that time, Aman told Brezina, President of Perpetual, that the legislature had passed a law removing the branching limitation but that the law would not go into effect until July of 1978. Brezina responded by informing Aman that the purpose for acquiring Home Building's stock had evaporated and that this new law had changed the "deal." It became clear after this meeting, subsequent correspondence, and a meeting in November of 1978, that Perpetual would not continue with the purchase agreement. In November of 1979, Home Building instituted this action against Perpetual. Upon the trial court's entering judgment for Perpetual, Home Building appeals.

The issues on appeal are: (1) Whether there was a material mistake of law which allowed rescission of the contract; (2) whether Perpetual was negligent, thus precluding rescission; and (3) whether the evidence supports the findings of the trial court that Perpetual acted equitably and promptly rescinded the contract.

Initially, we turn to whether Perpetual lacked knowledge of the new law and, if so, whether this was a material mistake of law allowing rescission of the contract. According to SDCL 53–11–2, a party may rescind a contract if the party's consent was given by

---

1. SDCL 52–6–1 provided: "No branch shall be established by any association outside of its regular lending area, nor shall a branch do business outside of the regular lending area of its principal office." Repealed by 1978 S.D.Sess.L., ch. 354, § 2.

2. Senate Bill 154 signed by the Governor on February 21, 1978, went into effect July 1, 1978. This bill repealed SDCL 52–6–1 as that statute then provided.

mistake.[3] A mistake may be either one of fact, SDCL 53–4–9, or one of law, SDCL 53–4–10. The trial court below held there was a mistake of law regarding the existence of the new law addressing branch banking requirements.

The trial court found that "[a]lthough this was not known by Brezina at the time of the meeting on March 30, 1978, or at the time of making the written offer on April 4, 1978, the South Dakota Legislature in February of 1978 had voted to repeal SDCL 52–6–1 which prohibited branching by a savings and loan association outside its regular lending area." This finding is supported by Aman's testimony relating his conversation with Brezina in June 1978. Regarding that conversation, Aman testified:

> Well, because time was certainly of essence, and getting more so, I said, "Mr. Brezina, you know it's only going to be another five or six weeks until that law is in effect" and then his response was, "What are you talking about" or something like that.

Aman then testified that the conversation continued:

> I was pretty surprised by his response, I'll tell you that. And so I said, "You know the statute we were talking about before, eliminating the branch savings and loan restrictions," and his response was something like, "Well, if that's the case, what am I buying," and then I was really surprised, and not wanting to get into an argument, I just realized that he had something else in mind.

Aman's own testimony supports the trial court's finding that as of June 1978 Brezina lacked knowledge that the law was repealed.

According to the record, whether the law had been repealed was the subject of a portion of the discussion at the meeting on March 30, 1978. Brezina testified that Aman told him there was a *rumor* that such a bill had been introduced in the legislature.

Aman and Maloney testified that Maloney then suggested checking out the existence of the bill with the county auditor. Maloney made a telephone call to the county auditor and reported to Brezina and Aman that the county auditor had no record of such a bill. The meeting then continued with further negotiations. The trial court found:

> At all times material hereto, including March 30, 1978 and April 4, 1978, [Home Building], through its stockholders and negotiators, knew that the Legislature had passed the repealer above mentioned. Also [Home Building] knew, through its representatives, that Brezina believed that the prohibition against branching was and would be in force and that at said times [Home Building] was aware that this was a material consideration for [Perpetual] in purchasing said stock.

By the testimony above and further testimony, the record clearly supports this finding. At trial, Aman testified that as of March 30, 1978, he was aware the new bill had already been passed and signed into law. Maloney and Brezina each testified that as of March 30, 1978, they believed the new bill did not exist. In fact, according to testimony by Aman and Brezina, Brezina was not aware of the change in law until June, 1978.

■ After considering this testimony, the trial court held there was a mistake of law. According to SDCL 53–4–10(2) a mistake of law is "[a] misapprehension of the law by one party of which the others are aware at the time of contracting, but which they do not rectify." At the meeting on March 30, 1978, Aman, who later testified he knew at that time the new law had passed, told Brezina merely of a *rumor* concerning a bill repealing the legal restrictions on branch banking. At the same meeting, Maloney called the county auditor to check on the bill and then assured Brezina there was no record of the bill. Understandably, Brezina

---

**3.** SDCL 53–11–2 provides, in pertinent part:
  A party to a contract may rescind the same in the following cases only:

  (1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake . . . .

left the meeting with the clear impression that such a bill did not exist. Further, a reading of Maloney's and Aman's testimony clearly demonstrates that when Brezina made the offer to purchase, Brezina was mistaken as to Perpetual's rights regarding branch banking. The testimony also is clear that Aman and/or Maloney were aware of such mistake and failed to rectify the mistake. The actions of Maloney and Aman did not suffice to rectify the misapprehension of the law under which Brezina was operating. The mere fact that the legislation was a matter of public record does not change the result in this case. Brezina's failure to research legislation under these circumstances where Maloney, a representative of Home Building, verified to him the nonexistence of the legislation is not fatal.

The trial court's finding that Brezina was mistaken as to the law and that Aman and/or Maloney were aware of the mistake and failed to rectify it can be reversed only if clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). The record, however, is quite clear that this finding is correct.

Home Building attacks the trial court's conclusion that rescission is permitted under SDCL 53–4–10(2), arguing that the mistake of law was not material. To allow rescission, a mistake must be material to the contract. *See* SDCL 53–4–2; SDCL 53–11–2. "Whether a mistake concerns a thing material to the contract must of necessity depend upon the facts and circumstances in the situation being considered." *Beatty v. Depue*, 78 S.D. 395, 403, 103 N.W.2d 187, 191 (1960). The law in question here substantially changed the right of Perpetual to open a branch office in Aberdeen. Since the purchase of Home Building's charter was solely for the purpose of opening a branch office, the change in this law was certainly material to the contract. The charter was the only asset of any value that Perpetual would have received under the contract. Home Building, as a business, closed in 1949 and apparently the only other assets were a couple of rolltop desks and a few dollars in the bank.

Home Building also mistakenly claims the court cannot grant rescission because the mistake involved here was not a mistake as to the *present* law. Home Building relies upon *McDonald v. Miners & Merchants Bank, Inc.*, 310 N.W.2d 591 (S.D. 1981), in support of this contention. *McDonald*, however, dealt with a mistake of fact, not a mistake of law as we have before us. SDCL 53–4–9, in defining a mistake of fact, requires the mistaken fact must be one of the past or present. SDCL 53–4–10 does not place such a requirement on a mistake of law. In any event, the record does not support Home Building's argument because the mistake was to present law inasmuch as the law repealing branch banking had been enacted and signed. Only the law's effective date had been postponed by constitutional mandate. Consequently, Perpetual's misunderstanding as to the new law is a mistake of law and is basis for rescission of this contract.

We next turn to Home Building's contention that Perpetual was negligent in not knowing about the change in law and that this negligence bars rescission. Freedom from negligence, however, is not a requirement for a mistake of law. SDCL 53–4–10. Freedom from negligence is only required for a mistake of fact. SDCL 53–4–9. Since this was a mistake of law, negligence is not at issue and Home Building's argument fails.

Finally, we examine whether the evidence supports the trial court's finding that Perpetual acted equitably and promptly rescinded the contract.[4] Perpetual contends it rescinded the contract at the time or

4. Home Building also challenges the trial court's findings that (1) this was a mistake of law; (2) Home Building knew of the mistake; (3) Home Building knew of the changing law at time of contracting; and (4) Perpetual was not negligent. The above discussions under issues one and two address these findings. As stated above, the record clearly supports the trial court's findings.

shortly after Brezina learned the law had changed in June 1978 when Aman told him about the law. As Aman testified, Brezina appeared very surprised to hear about the law and immediately stated there was no reason then for Perpetual to buy Home Building's charter. Aman testified that after this meeting there was no doubt in his mind that litigation over this contract would follow.

As the trial court stated, "[i]t is difficult to determine when Perpetual avoided the contract because after Mr. Brezina became aware of the mistake during the summer of 1978, the parties attempted to renegotiate the contract." In September or October of 1978, Home Building retained counsel to enforce the contract against Perpetual. In November, 1978, Brezina met with Home Building's Board of Directors to renegotiate the contract. These actions and the conduct of Brezina constitute avoidance of the contract sufficient to alert Home Building that the contract would not be executed as agreed because of the mistake. This is evident from Aman's testimony when he stated he knew in June 1978 that litigation over this contract was inevitable.

Accordingly, we hold that the record overwhelmingly supports the trial court's finding that "Brezina, with reasonable promptness, notified the Plaintiff of his unwillingness to purchase the stock at the price agreed upon because of his mistake." This finding is not clearly erroneous. SDCL 15–6–52(a).

We affirm.

All the Justices concur.