1996 SD 97

**LPN TRUST, Plaintiff and Appellee,**

v.

**FARRAR OUTDOOR ADVERTISING, INC., Defendant and Appellant.**

Nos. 19128, 19147.

Supreme Court of South Dakota.

Considered on Briefs Nov. 30, 1995.

Decided July 31, 1996.

Jon W. Mattson, Deadwood, for plaintiff and appellee.

Doyle D. Estes and Nora K. Kelley, Rapid City, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1] Farrar Outdoor Advertising, Inc. (Lessee) appeals the trial court's decision to reform the lease and evict Lessee. LPN Trust (Trust) filed a notice of review as to the trial court's denial of double damages.

We affirm in part, reverse in part and remand as to the issue of reformation.

## FACTS AND PROCEDURAL HISTORY

[¶ 2] Nick Leveque, Sr., (Nick) and Lessee entered into the lease on November 8, 1991. Prior to this agreement, said parties had made similar lease arrangements. The lease allowed Lessee to maintain 'two existing advertising display (billboard) sites and to erect a third display site on Nick's land in Boulder Canyon adjacent to U.S. Highway 14A leading to Deadwood, South Dakota. Commencement of this lease began on May 1, 1991, and was to run for ten years. At Nick's request, however, Lessee wrote a two over the ten, changing the length of the lease to two years. Nick signed the lease himself. Immediately following the initial term, is the following language in the same print size:

> ... and shall continue thereafter, at the option of the Lessee, for a second term of ten years, and thereafter from year to year, on the same terms, until terminated as of any subsequent anniversary of the effective date by written notice of termination given not less than sixty days prior to such anniversary date by either the Lessor or Lessee.

The lease did not limit the number of billboards to be placed on each site.

[¶ 3] At the time the agreement was signed, Nick was suffering from terminal cancer. However, Nick still handled all of his own business affairs. Nick passed away in July 1992. Trust was established shortly prior to Nick's death, with Nick's three sons, Vic, Nick, Jr., and Mike, as trustees. Trust took possession of all of Nick's property, including the land that was leased to Lessee. By this time, Lessee had invested $30,000 to $50,000 in these three sites and twelve advertisements. Trust next contacted Lessee to renegotiate Lessee's lease payment. Lessee sent Trust a copy of the lease, stating that the lease provided Lessee with a ten-year option. After negotiations to increase the lease payments broke down, Trust sent a notice to quit to Lessee. Originally, Trust commenced suit to evict Lessee on August 19, 1993, alleging the lease expired on April 30, 1993, so Lessee was holding over. On April 28, 1994, Trust amended its complaint to reallege the forcible entry and detainer action and to also seek reformation, or alternatively, rescission or termination of the lease.

[¶ 4] Prior to trial, Lessee made a motion in limine to prohibit Trust from eliciting any parol evidence regarding any alleged oral agreement which modified the written lease. The trial court issued its first memorandum opinion denying Lessee's motion in limine. This decision was based on the trial court's rationale that: (1) the lease was ambiguous, and (2) Trust was alleging the lease was obtained through duress, fraud, undue influence, or mistake. In addition, Lessee requested a separate trial on the forcible entry and detainer action from the reformation proceeding. The trial court originally granted Lessee's request to bifurcate the two actions.

[¶ 5] A court trial was held on August 30, 1994, on the reformation claim. Immediately before the reformation trial, Trust moved to consolidate the two actions. The trial court did not rule on the matter, but indicated that it would hear evidence regarding the forcible entry and detainer action in conjunction with the reformation trial and reserve its ruling. The trial court heard parol evidence from Nick's paramour, Abbie McGillivray, who was present in Nick's car when he signed the lease while standing outside the vehicle, and from two of Nick's sons. This evidence consisted of statements that Nick would not have entered into a long-term lease and that the lease he signed was for two years. Also, there was testimony from Trust claiming that Nick did not intend to allow more than one billboard on each site. However, none of the testimony elicited explicitly contradicted the ten-year option. The trial court issued its second memorandum decision finding that, based upon mistake, Nick signed the lease believing it to be for two years with no option and for only three signs. Therefore, the trial court reformed the original lease to remove the ten-year option. In addition, the trial court consolidated the action for reformation and forcible entry. It awarded $13,846.00 in damages to Trust for Lessee's wrongful use of the property from May 1, 1993, through

January 1, 1994. The trial court did not find the holdover to be willful, so it did not award double damages pursuant to SDCL 21–3–8.[1]

## ISSUES

I. Did the trial court err by joining the reformation and forcible detainer actions?

II. Whether the trial court correctly admitted parol evidence about the lease?

III. Was mistake present to allow reformation?

IV. Did the trial court correctly assess damages?

V. Are attorney fees and travel expenses properly included as costs?

In addition, Trust filed a notice of review as to the trial court's denial of double damages.

## ANALYSIS

**[¶ 6] I. Did the trial court err by joining the reformation and forcible detainer actions?**

[¶ 7] Lessee argues that the trial court erred by joining the forcible entry and reformation actions because the reformation matter is equitable in nature and, therefore, not permitted in an action for forcible entry and detainer. Trust claims that the action is a forcible detainer action. The record shows this to be a forcible detainer action based on the fact that the parties agreed to proceed under the forcible detainer procedure. Since this was a forcible entry and detainer action, we must now determine if the joinder of this action to the reformation hearing was proper.

[¶ 8] The construction and application of statutes are reviewed *de novo*, without deference to the trial court. *In re Estate of Pierce*, 531 N.W.2d 573, 575 (S.D.1995); *Muhlenkort v. Union County Land Trust*,

530 N.W.2d 658, 660 (S.D.1995). The statute at issue is SDCL 21–16–4 which states: "An action under the provisions of this chapter cannot be brought in connection with any other except for rents and profits or damages[.]"

[¶ 9] In *Heiser v. Rodway*, 247 N.W.2d 65, 68 (S.D.1976), we stated that "inquiry may be made into equitable considerations in an unlawful detainer action, as long as those considerations are relevant to the right of possession." Distinction between suits in equity and law was abolished in this state by SDCL 15–6–2.[2] This action was commenced in circuit court, which has jurisdiction over both equitable actions and actions at law by virtue of SDCL 16–6–8.[3] Forcible detainer actions are intended to prevent protracted litigation by limiting the scope so collateral issues not connected with the question of possession do not burden the proceeding. *Heiser*, 247 N.W.2d at 67 (citing *Rosewood Corp. v. Fisher*, 46 Ill.2d 249, 263 N.E.2d 833 (1970), *cert. denied*, 401 U.S. 928, 91 S.Ct. 924, 28 L.Ed.2d 209 (1971)).

[¶ 10] Trust has raised equitable issues relevant to the question of rightful possession. We are aware that to admit evidence of such matters, even on a limited basis, will interfere with the summary nature of the remedy. We agree with the trial court that interference is warranted in this case. "[The] right ... to be heard on relevant matters ... as well as the desirable purpose of preventing a multiplicity of suits, is, and must be, superior to the desire to provide a speedy remedy for possession." *Heiser*, 247 N.W.2d at 68 (quotations omitted). This court previously has allowed equitable issues to be raised in forcible entry and detainer actions. *See Heiser*, 247 N.W.2d at 68 (inquiry was allowed into equitable defenses in a forcible entry and detainer action); *Shaw v.*

---

1. SDCL 21–3–8 states:

   For willfully holding over real property, by a tenant after the end of his term, and after notice to quit has been duly given, and demand of possession made, the measure of damages is double the yearly value of the property, for the time of withholding, in addition to compensation for the detriment occasioned thereby.

2. SDCL 15–6–2 states: "There shall be one form of action to be known as a 'civil action.' The distinction between actions at law and suits in equity, and the forms of all such actions and suits, are abolished in this state."

3. SDCL 16–6–8 grants circuit courts the powers of "chancery as well as common-law jurisdiction."

*George,* 82 S.D. 62, 67, 141 N.W.2d 405, 407 (1966) (forcible entry and detainer action where court allowed consideration of equitable estoppel issue to determine if lease was valid); *Federal Land Bank of Omaha v. Matson,* 68 S.D. 538, 541, 5 N.W.2d 314, 315 (1942) (court considered equitable estoppel to prevent invocation of statute of frauds to ascertain if valid lease existed). We affirm the trial court's joinder of the actions.

### [¶ 11] II. Was mistake present to allow reformation?

■ [¶ 12] We will next address the issue of mistake, since this will dispose of the remaining issues. The trial court determined that a unilateral mistake had been made by Nick when he signed the contract, for he did not understand the effect of the ten-year option and did not know that more than one sign would be placed on each site. The trial court revised the lease under SDCL 21–11–1.

■ [¶ 13] We review a trial court's grant or denial of reformation under an abuse of discretion standard. *Knudsen v. Jensen,* 521 N.W.2d 415, 420 (S.D.1994). " 'As a general principle, one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party.' " *Flynn v. Lockhart,* 526 N.W.2d 743, 746 (S.D.1995) (quoting 17A AmJur2d *Contracts* § 224 (1991) (emphasis added) (citing *Johnson v. Allis Chalmers Corp.,* 162 Wis.2d 261, 470 N.W.2d 859, 868 (1991))). In granting the reformation, the court merely revises the writing to express their prior agreement. *Burke v. Bubbers,* 342 N.W.2d 18, 20 (S.D.1984) (citing *Garber v. Haskins,* 84 S.D. 459, 464, 172 N.W.2d 721, 723 (1969); *Essington v. Buchele,* 79 S.D. 544, 548–49, 115 N.W.2d 129, 131 (1962)).

> "A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing."

*Knudsen,* 521 N.W.2d at 420 (quoting Restatement (Second) of Contracts § 157 (1982)). SDCL 21–11–1 provides:

> When through … mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons in good faith for value.

Nick signed the contract himself. He had negotiated and signed several leases with billboard advertisers. "To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." 17A Am-Jur2d *Contracts* §§ 224–228 (1991).

■ [¶ 14] Both parties agree that the lease was for two years. What is at issue is whether the ten-year option is valid. Any mistake regarding the meaning of this unambiguous written agreement stemmed from Nick's neglect of his legal duty to read and understand the clear import of the ten-year option. In *Riggen v. Lindley,* this court explained the legal difference between mistake and negligence:

> " '[Mistake] is … distinguished from that inattention or absence of thought which [is] inherent in negligence. The erroneous conception or conviction of the understanding which constitutes the equitable notion of mistake has nothing in common with negligence; equity will not relieve a person from his erroneous acts or omissions resulting from his own negligence.' "

58 S.D. 343, 348, 236 N.W. 280, 282 (1931) (quoting 3 J. Pomeroy, Equity Jurisprudence § 839 (4th Ed 1918), now found in 3 J. Pomeroy, Equity Jurisprudence § 839 (5th Ed 1941)). SDCL 53–4–9 defines mistake of fact as "a mistake not caused by the neglect of a legal duty on the part of the person making the mistake." This definition has been interpreted as follows:

The fact concerning which the mistake was made must be material to the transaction and must not result from the want of such care and diligence as would be exercised by a person of reasonable prudence under the same circumstances and must relate either to a present or past fact.

*Nilsson v. Krueger,* 69 S.D. 312, 317, 9 N.W.2d 783, 786 (1943) (interpreting SDC 10.0312, which was recodified as SDCL 53–4–9); *see also Beatty v. Depue,* 78 S.D. 395, 402, 103 N.W.2d 187, 191 (1960). There was no evidence showing that Nick was unable to read and understand for himself the ten-year option. In fact, Nick had executed other leases which provided for renewal options. "The test is whether his action conformed to the prudent person standard of care." *McDonald v. Miners & Merchants Bank, Inc.,* 310 N.W.2d 591, 594 (S.D.1981). Based on the evidence, there is clear and convincing evidence in this record showing Nick did intend to grant this option. *Id.* (citing *Rochholz v. Farrar,* 547 F.2d 63 (8th Cir.1976)). Nick had the original length of the term modified, but requested no change or deletion in the language set forth in the written contract immediately thereafter.

[¶ 15] It is important to note that neither the ten-year option nor the number of signs became a problem until after Nick died. Trust wanted more money from Lessee. Trust admits and the record reflects that Nick had signed leases before that contained options. In fact, the record contains another lease that granted a ten-year option which Nick had negotiated.[4] According to testimony by Abbie McGillivray, Nick had to drive by the two erected sites with multiple signs in order to meet Lessee to sign the lease. He saw that the two already had more than one advertisement per site. The evidence shows that Nick had previously negotiated a number of leases that were very similar to the lease at issue. The trial court did not hold lessee took unfair advantage of Nick in this matter. Although Nick did have health problems, Trust and Abbie McGillivray admitted that Nick was competent, capable and would always read a contract before signing

it. Trust cannot " 'claim a better version of the facts' " than their own testimony. *Bosse v. Quam,* 537 N.W.2d 8, 12 (S.D.1995) (quoting *Parsons v. Dacy,* 502 N.W.2d 108, 111 (S.D.1993)). Nick was cognizant enough to change the length of the lease from ten years to two years. However, Nick did not change the length of the option, which followed directly behind the term he did change, nor did Nick limit the number of signs per site. The agreement provided: "Neither [Nick] nor the Lessee shall be bound by any agreement or representations, expressed or implied, not contained herein." The basic premise in the law is that when the parties reduce an agreement to writing and sign it, that written agreement is entitled to enforcement. *McDonald,* 310 N.W.2d at 593; SDCL 53–8–5. In this case, the trial court did not find fraud on the part of the Lessee but only mistake on the part of Nick. To allow reformation of this unambiguous contract would open the flood gates for all dissatisfied contractees to claim mistake when more revenue is desired. This was the final and total agreement between the parties. Nick signed it, therefore the agreement is binding. Based on these facts, the trial court erred in finding the lease option was voidable due to mistake because the evidence submitted does not substantiate such a finding.

[¶ 16] Therefore we reverse the trial court's reformation. On remand the trial court needs to determine whether the option to renew was exercised by Lessee. Based on this determination, there is no reason to reach the other issues or the notice of review.

[¶ 17] MILLER, C.J., KONENKAMP and GILBERTSON, JJ., concur.

[¶ 18] SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

[¶ 19] The evidence in the record is conflicting. On one hand, it appears Nick made no mistake in signing the contract. His heirs were just unhappy with the bargain he made and wanted to change the contract.

[¶ 20] On the other hand, the findings of fact indicate Nick made a mistake in signing

---

4. On August 28, 1990, Nick signed a ten-year lease to allow another advertiser to display billboards. This lease provided the Lessee the right to renew for another ten years.

the contract. However, Nick's mistake, if any, was caused by his negligence because he failed to read the contract.[5] Mistakes caused by negligence cannot be the basis for reformation of a contract. *Nilsson v. Krueger,* 69 S.D. 312, 317, 9 N.W.2d 783, 786 (1943). Nick was bound by the contract and so are his heirs. Therefore, the trial court erred in granting reformation.[6]

**5.** Finding of Fact # XI indicates that Farrar "did not recall [Nick] reading the lease ... and does not know if [Nick] read the lease."

**6.** It is not necessary in this case to determine that the findings of fact were clearly erroneous. Nick may have stated, after signing, that he entered a two-year lease. He may have previously stated he did not intend to enter into any lease for more than two years. However, the terms of the lease he signed included the ten-year option. As the majority opinion states: "Any mistake regarding the meaning of this unambiguous written agreement stemmed from Nick's neglect of his legal duty to read and understand the clear import of the ten-year option." In effect, we are adding a conclusion of law: That Nick's failure to read the lease constituted negligence, which precluded reformation in this case.